**Basiru KANAJI, Plaintiff,**

v.

**CHILDREN'S HOSPITAL OF PHILADELPHIA, Defendant.**

**Civil Action No. 00–937.**

United States District Court, E.D. Pennsylvania.

Aug. 13, 2003.

Steven K. Ludwig, Fox Rothschild O'Brien & Frankel, LLP, Philadelphia, PA, for Defendants.

David W. Wolf, The Law Offices of David W. Wolf, Philadelphia, PA, for Plaintiff.

## MEMORANDUM OPINION

RUFE, District Judge.

The motion presently before the Court presents a very interesting, but narrow, issue: whether a plaintiff can state a claim for national origin discrimination under Title VII of the Civil Rights Act of 1964 when he alleges only that he is "of direct African descent," and does not specify his nation or country of origin. Defendant argues that this is a defect fatal to Plaintiff's claim, and moves for partial judgment on the pleadings. As explained below, the Court disagrees, and Defendant's motion is denied.

## I. BACKGROUND

This employment discrimination case has a long and tortured procedural history that will not be recounted in full here. Plaintiff is Basiru Kanaji, a former employee of Defendant Children's Hospital of Philadelphia. Plaintiff filed his Amended Complaint on April 3, 2000, and alleges that he was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17 ("Title VII"), on the basis of national origin (Count 1) and gender (Count 2); and on the basis of age in violation of the Age Discrimination in Em-

ployment Act, 29 U.S.C. § 621 *et seq.* (Count 3). After two and a half years of extremely contentious discovery, which required Court Orders on more than a dozen occasions,[1] Defendant filed a Motion for Partial Judgment on the Pleadings on October 1, 2002. The sole argument advanced in Defendant's Motion is that Count 1 of the Amended Complaint fails to establish a *prima facie* case of national origin discrimination under Title VII. More specifically, it argues that where Plaintiff alleges a national origin claim based on his "direct African descent," and without identifying a particular country,[2] he essentially pleads a claim for discrimination on the basis of race. Thus, so the argument goes, Plaintiff's claim for national origin discrimination is legally insufficient.

Although it is not necessary to recount all of the evidence in this case for purposes of today's decision, the Court will summarize some of Plaintiff's evidence that relates to his national origin discrimination claim. Plaintiff offers the following as examples of discriminatory attitudes and actions by Defendant: (1) ordering that all "Afrocentric paintings" be removed from office walls; (2) criticizing individuals who were "Afrocentric ... in dress or in speech" as "unprofessional"; (3) forbidding Plaintiff and a co-worker to greet each other by saying "good morning, African"; (4) making "negative and critical comments" to an employee "about [her] ethnic African clothing items and accessories"; and (5) refusing to use the word "Africa," substituting the word "abroad" in its place. Plaintiff's Supp. Mem. in Opposition to Defendant's Motion at 2–4 (citing record). Plaintiff alleges differential treatment

from employees who were not of direct African descent, and cites his national origin as one of the bases for such disparate treatment.

This case was reassigned to this judge's docket on April 4, 2003 in accordance with the Eastern District of Pennsylvania's procedures for random reassignment of cases. Thereafter the Court permitted further briefing on the issues raised in Defendant's Motion, and notified the parties that it might consider Defendant's Motion as one for summary judgment. Those memoranda of law having been submitted, the Motion is now ripe for a decision. Because the Court will consider some matters outside the pleadings in reaching its decision, it will consider Defendant's Motion under a summary judgment standard. *See* Fed. R.Civ.P. 12(c) (if matters outside the pleadings are considered, motion shall be treated as one for summary judgment).

## II. *STANDARD OF REVIEW*

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a

---

**1.** One such Order was reported at *Kanaji v. Philadelphia Child Guidance Center of Children's Hospital,* No. Civ.A.00–937, 2001 WL 708898 (E.D.Pa. June 20, 2001) (Waldman, J.). Among other things, the Court's June 20,

2001 decision granted Plaintiff's request to amend Defendant's name in the case caption.

**2.** In fact, Plaintiff was born in the West African nation of the Gambia. Kanaji Dep. at 52.

verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. *DISCUSSION*

Under Title VII, it is an unlawful employment practice for an employer to discharge or otherwise discriminate against any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Nowhere does Congress or the agency charged with administering Title VII, the Equal Employment Opportunity Commission ("EEOC"), define "national origin."

Defendant fails to cite a single case where a court has held that a plaintiff alleging "national origin" discrimination must specify a "country" or "nation" of origin. In attempting to graft its preferred meaning onto the term, Defendant cites to the Supreme Court's decision in *Espinoza v. Farah Manufacturing Co., Inc.,* 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973). There, Justice Marshall wrote, "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Id.* at 88, 94 S.Ct. 334. Citing this language, Defendant contends that Plaintiff cannot be a member of a "national origin" protected class because his Amended Complaint relies only on his racial characteristics, *i.e.,* being "of direct African descent," and not his particular country or nation of origin. Defendant's reliance on *Espinoza* is misplaced. In fact, the decision actually supports a broader reading of "national origin" than that advanced by Defendant.

First, the language quoted above is dicta, and does not represent the Supreme Court's holding. The issue before the *Espinoza* court was whether an employer discriminates on the basis of "national origin" under Title VII when it utilizes a hiring policy that excludes aliens, *i.e.,* individuals who are not citizens of the United States. *Id.* at 87, 94 S.Ct. 334. The Supreme Court held that it did not.

In reaching this decision, the Supreme Court compared and contrasted the permissible practice of requiring citizenship as a condition of employment, with other practices that would violate Title VII's proscription against "national origin" discrimination. The plaintiff in *Espinoza* was a Mexican citizen, and the Supreme Court noted that there was no evidence that the employer's policy had the purpose or effect of discriminating against persons of "Mexican national origin." By way of example, it distinguished the case before it from one where "the company refused to hire aliens of Mexican or Spanish-speaking background while hiring those of other national origins." *Id.* at 92 n. 5, 94 S.Ct. 334. Later in the opinion the Supreme Court provided a second example of an illegal employment practice: "hiring aliens of Anglo–Saxon background but refusing to hire those of Mexican or Spanish ancestry." *Id.* at 95, 94 S.Ct. 334. By suggesting that a refusal to hire people of "Spanish-speaking background" would constitute discrimination on the basis of "national origin," or that insisting on an "Anglo Saxon background" as a condition of employment is also prohibited, it is clear that the Supreme Court would not require that one's "national origin" be linked directly to a specific country or nation. Rather, this implies that the term "national origin" must embrace a broader class of people, and that the term is better understood by reference to certain traits or characteristics that can be

linked to one's place of origin, as opposed to a specific country or nation.[3]

Guidelines issued by the EEOC also support this conclusion, and the Court is mindful that such guidelines are usually "entitled to great deference" as long as they are consistent with congressional intent. *Id.* at 94, 94 S.Ct. 334. The EEOC has not defined "national origin," but it has defined "national origin discrimination":

> The Commission defines national origin discrimination *broadly* as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, *place of origin;* or because an individual has the *physical, cultural or linguistic characteristics of a national origin group.*

29 C.F.R. § 1606.1 (emphasis added). There are a few salient points that may be taken from this definition. First, the guideline encourages a broad interpretation of this provision, not the narrow interpretation urged by Defendant. Second, it refers to discrimination because of a connection to a "place of origin," not a "country of origin." In fact, the regulation was amended in 1980 to replace "country of origin" with "place of origin" in order to discourage "reference to a sovereign nation." *See* Guidelines on Discrimination Because of National Origin, 45 Fed.Reg. 85632, 85633 (Dec. 29, 1980) (codified at 29 C.F.R. pt. 1606).[4] These considerations lend strong support to the notion that

one's "national origin" need not be linked directly to a particular nation. Moreover, the guideline directs decision makers to scrutinize situations where an individual has certain traits or "characteristics of a national origin group," which the Court believes is consistent with the reality of this form of discrimination:

> Differences in dress, language, accent and custom associated with a non-American origin are more likely to elicit prejudicial attitudes than the fact of the origin itself.
>
> ... An individual's speech, dress, and mannerisms are his present; his ancestral origin is his past. Only through the medium of characteristics does ancestral origin become apparent in the present.

Stephen M. Cutler, Note, *A Trait–Based Approach to National Origin Claims Under Title VII*, 94 Yale L.J. 1164, 1165 & n.5 (1985). The Third Circuit has also recognized that discrimination generally is triggered by a person's physical or behavioral traits that reflect his or her membership in a protected class:

> We think unlawful discrimination must be based on [the plaintiff's] objective appearance to others, not his subjective feelings about his own ethnicity. Discrimination stems from a reliance on immaterial outward appearances that stereotype an individual with imagined, usually undesirable, characteristics

---

**3.** In finding a lack of evidence of discrimination on the basis of national origin, the Supreme Court found it significant that the worker hired in place of the plaintiff in *Espinoza* was "a citizen with a Spanish surname." *Id.* at 93, 94 S.Ct. 334. This, too, suggests that "national origin" should be interpreted broadly, and should embrace groups of people not necessarily identified with a particular nation.

**4.** In support of this amendment, the Federal Register cites to *Roach v. Dresser Industrial Valve and Instrument Division*, 494 F.Supp.

215 (D.La.1980), where the court rejected an argument that "Cajuns" cannot assert national origin claims because their place of origin, Acadia, is not and never was a country. The *Roach* court made a cogent observation that mirrors this Court's understanding of Title VII: "Distinctions between citizens solely because of their ancestors are odious to a free people whose institutions are founded upon the doctrine of equality, and we decline to accept the argument that litigation of this sort should be governed by the principles of sovereignty." *Id.* at 218.

thought to be common to members of the group that shares these superficial traits. It results in a stubborn refusal to judge a person on his merits as a human being. Our various statutes against discrimination express the policy that this refusal to judge people who belong to various, particularly disadvantaged, groups is too costly to be tolerated in a society committed to equal individual liberty and opportunity.

*Bennun v. Rutgers State Univ.*, 941 F.2d 154, 173 (3d Cir.1991).[5]

The Court's interpretation of "national origin" is consistent with this unfortunate reality. Taken in the light most favorable to Plaintiff, there is sufficient evidence in the record to support a finding that such untoward conduct occurred in the context of Plaintiff's employment; Defendant observed Plaintiff's speech, dress, and other outward displays of his "African" national origin and dealt with him on that basis. Assuming all other legal requirements are satisfied, such conduct would contravene Title VII. Whether Plaintiff alleged his specific nation of origin in his Amended Complaint is of no legal moment. In addition, the Court must reject Defendant's argument that Plaintiff is using his African heritage as a proxy for race. Even a cursory review of the examples of Defendant's allegedly discriminatory conduct illustrate a distaste for expressions of African identity, not racial identity. *See* examples listed *supra* at Part. I.

Finally, Defendant's best argument lays with its citation to the legislative history of Title VII. As the Supreme Court noted in *Espinoza*, the legislative history address-ing the definition of "national origin" is "quite meager." *Espinoza*, 414 U.S. at 88, 94 S.Ct. 334. During congressional debates, members of the House of Representatives expressed concern that an employer might cite "national origin" as a bona fide occupational qualification, and thus make racial qualifications a legitimate precondition for employment. *See* 42 U.S.C. § 2000e–2(e)(1) (setting out Title VII defense "where religion, sex, or national origin is a bona fide occupational qualification"). The debate that ensued focused on the distinction between national origin and race. Congressman Roosevelt, Chairman of the House Subcommittee that reported the bill, stated the following:

> May I just make very clear that 'national origin' means national. It means the country from which you or your forebears came from. You may come from Poland, Czechoslovakia, England, France, or any other country. It has nothing to do with broad terms such as the gentleman has referred to [*i.e.*, race].

110 Cong. Rec. 2549 (Feb. 8, 1964). Congressman Dent elaborated: "National origin, of course, has nothing to do with color, religion, or the race of an individual." *Id.* These debates do not address the issue presently before the Court, *i.e.*, whether a national origin claim must, as a matter of law, link the plaintiff to a specific sovereign nation. Moreover, as set forth above, there is ample legal authority that guides the Court to a broader definition than that stated in the congressional debates. Therefore, this legislative history carries little weight with the Court.

---

**5.** The EEOC implicitly shares this view:

> In order to have a claim of national origin discrimination under Title VII, it is not necessary to show that the alleged discriminator knew the particular national origin group to which the complainant be-longed.... [I]t is enough to show that the complainant was treated differently because of his or her *foreign accent, appearance or physical characteristics.*

45 Fed.Reg. at 85633 (emphasis added).

Therefore, it is the Court's opinion that Plaintiff's Title VII claim for "national origin" discrimination cannot fail merely because he identifies himself in the Amended Complaint as being "of direct African descent," and does not specify a nation or country of origin. This interpretation is consistent with the broad construction of national origin claims adopted by other courts. *See, e.g., Dawavendewa v. Salt River Project Agric. Improvement and Power Dist.,* 154 F.3d 1117, 1119–20 (9th Cir.1998) (holding discrimination on the basis of membership in Hopi Indian tribe constitutes national origin discrimination); *Almendares v. Palmer,* No. 3:00–CV–7524, 2002 WL 31730963, at *8–11 (N.D.Ohio Dec.3, 2002) (rejecting argument that plaintiffs must allege their specific nation of origin in order to state a claim for national origin discrimination under Title VI); *LaRocca v. Precision Motorcars, Inc.,* 45 F.Supp.2d 762, 769 (D.Neb.1999) (listing "numerous nationalities" that fall within purview of Title VII national origin discrimination claims, including several not linked to a specific country, such as "Alaskan," "American Indian," "Gypsy," and "Slavic"); *Lewis v. Delaware Dep't of Public Instruction,* 948 F.Supp. 352, 360 (D.Del.1996) (plaintiff can satisfy prima facie case for Title VII discrimination on basis of "Hispanic" national origin); *Roach,* 494 F.Supp. 215 (holding Cajuns may assert Title VII claim for national origin discrimination).

An appropriate Order follows.

### ORDER

**AND NOW,** this 13th day of August, 2003, upon consideration of Defendant's Motion for Judgment on the Pleadings [Doc. # 75], Plaintiff's Response thereto [Doc. # 78], Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion [Doc. # 132], Defendant's Supplemental Memorandum Regarding Plaintiff's National Origin Claims [Doc. # 132], Plaintiff's Supplemental Memorandum Regarding Plaintiff's National Origin Claims [Doc. # 135], and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that Defendant's Motion is **DENIED.**

It is so **ORDERED.**