Maerene CROSBY, Appellant,

v.

MINYARD FOOD STORES, INC. d/b/a
Sack N' Save a/k/a Sack N' Save
# 206, Appellee.

No. 05–02–01766–CV.

Court of Appeals of Texas,
Dallas.

Nov. 26, 2003.

Rehearing Overruled Jan. 13, 2004.

Anjel Kerrigan Avant, Kondos & Kondos Law Office, Richardson, for Appellant.

Jerry Fazio, Jason Eric Kipness, Owen & Fazio, P.C., Dallas, for Appellee.

Before Justices MORRIS, O'NEILL, and LANG.

## OPINION

Opinion by Justice MORRIS.

In this trip and fall case, Maerene Crosby sued Minyard Food Stores, Inc. for injuries she allegedly sustained after tripping on a mat at the entrance of a grocery store. Although she prevailed at trial, Crosby appeals the jury's verdict finding her 50% negligent and awarding her $488.75 for past medical care. Crosby contends the trial court erred by admitting into evidence the affidavit of Minyard's expert doctor because the contents of the affidavit were hearsay. Crosby further contends the trial court's admission of the affidavit probably caused the rendition of an improper judgment.

In a single cross issue, Minyard contends the trial court erred in refusing to grant it a directed verdict on the ground that Crosby submitted no evidence that Minyard had actual or constructive knowledge of the allegedly dangerous condition that caused her injuries. After reviewing the evidence, we conclude the trial court properly refused to grant Minyard's motion for directed verdict because there was some evidence of probative force to show that Minyard had knowledge of a condition on the premises that posed an unreasonable risk of harm. We also conclude the trial court erred in admitting the affidavit of Minyard's expert doctor. After reviewing the record, however, we conclude the erroneous admission of the affidavit was harmless. Accordingly, we affirm the trial court's judgment.

We first address the issue of the trial court's ruling on Minyard's motion for directed verdict. Minyard claims it was entitled to a directed verdict because the evidence was insufficient to raise a fact issue on an essential element of Crosby's claim. *See Cano v. North Tex. Nephrology Assocs., P.A.,* 99 S.W.3d 330, 338 (Tex. App.-Fort Worth 2003, no pet. h.). To succeed on her claims, Crosby was required to show that Minyard had actual or constructive knowledge of a condition on its premises that posed an unreasonable risk of harm. *See CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 99 (Tex.2000). Crosby claimed in her suit that she tripped because a mat at the entrance of the store was buckled and had a bump in it. According to Minyard, Crosby presented no evidence the store knew or should have known about the bump in the entry mat that caused Crosby to fall. Minyard's focus on the bump in the mat as the dangerous condition is misplaced, however.

Crosby testified at trial that she fell on the mat in the entry of the grocery store. According to Crosby, the mat was buckled causing her to trip. Crosby presented evidence that the mat frequently became buckled due to heavy foot traffic in and out of the store. An employee of the store testified he had to straighten the mat between 48 and 86 times during an eight hour shift. Finally, Crosby submitted accident reports signed by the store's managers showing that several people had tripped and fallen on the mat within a few weeks before Crosby's accident.

The Texas Supreme Court has held that "even in the absence of evidence showing the storeowner's actual or constructive knowledge of the presence on the floor of the specific object causing the fall," the storeowner may be liable if the invitee can show the storeowner was aware of a high risk that the dangerous condition would occur. See Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 295 (Tex.1983). In Corbin, evidence showed grapes recurringly fell from a grape display and posed a high risk of customer falls. The supreme court held the store owner's knowledge about the display and the risk the fallen grapes posed was sufficient to allow the issue of negligence to go to the jury despite the fact there was no evidence to show the storeowner knew there were grapes on the floor at the time the plaintiff fell. Id. at 297. Similarly, in National Convenience Stores, Inc. v. Erevia, the evidence was held sufficient to support the jury's finding of liability where it was shown the storeowner was aware that ice on the floor was a common problem associated with its drink display even though there was no showing the storeowner was aware of the ice on the floor at the time of the accident at issue. Nat'l Convenience Stores, Inc. v. Erevia, 73 S.W.3d 518, 523 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

In this case, Crosby presented evidence that Minyard was aware of the fact that the mat at the entry to the store was often buckled and caused customers to fall. Because Crosby presented evidence that the mat itself was a problem creating a frequent risk of injury, it was not necessary for her to show that Minyard was aware or should have been aware of the specific bump in the mat that caused her to fall. See Corbin, 648 S.W.2d at 297; Erevia, 73 S.W.3d at 523.

Although Minyard attempts to analogize the facts of this case to cases in which property owners were found not liable because they were unaware of the unsafe condition at the time the accident occurred, the cases cited by Minyard address a storeowner's knowledge of a specific, non-recurring condition rather than claims based on a continuing hazard of which the storeowner was aware. See Wal–Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934 (Tex.1998); Brookshire Food Stores, L.L.C. v. Allen, 93 S.W.3d 897 (Tex.App.-Texarkana 2002, no pet.); Wal–Mart Stores, Inc. v. Bolado, 54 S.W.3d 837 (Tex. App.-Corpus Christi 2001, no pet.). A claim that something used by the storeowner is inherently dangerous is fundamentally different than a claim that a dangerous condition arose in the store and caused injuries.

In CMH Homes v. Daenen, the Texas Supreme Court addressed the legal consequences of a premises owner's awareness that the premises, although originally safe, would become unsafe over time. See CMH Homes, 15 S.W.3d at 101. The court specifically distinguished the facts before it from those cases such as Corbin in which the injury-causing instrument was unsafe from the moment it was used. Id. In the case before us, the mat did not become unsafe over time but was unsafe from the moment it was put on the floor

because of its tendency to buckle frequently when subjected to foot traffic.

In *Wal–Mart Stores, Inc. v. Reece,* a customer slipped in a puddle of clear liquid by the store's snack-bar. The snack-bar contained a self-service drink and ice machine. *See Wal–Mart Stores, Inc. v. Reece,* 81 S.W.3d 812, 813 (Tex.2002). Although the store manager conceded at trial that the self-service drink and ice machine generally increased the likelihood of spills in the snack bar area, there was no evidence that the spilled liquid causing the customer to fall was a drink or ice. *Id.* at 817. Furthermore, in contrast to the case before us, there does not appear to have been any evidence of a history of falls in the snack bar caused by spilled drinks or ice that would have put the store on notice that the self-service machine itself posed an unreasonable risk of injury.

All the evidence in this case showed that the mat at the entrance of the store had a tendency to buckle and required frequent straightening. The evidence also showed that Minyard was aware that the recurrent bumps in the mat were causing customers to fall. This evidence was sufficient to allow the issue of Minyard's negligence to be presented to the jury. The trial court did not err in denying Minyard's motion for directed verdict. We resolve Minyard's cross issue against it.

We turn now to Crosby's issue relating to the trial court's admission of an affidavit created by Minyard's expert physician, Dr. Jack Kern. Kern's affidavit sets forth his opinions about Crosby's medical condition and her treatment by Dr. Mark Rayshell, a chiropractor. During Crosby's direct examination of Rayshell at trial, Rayshell was asked if he had read Kern's affidavit. Rayshell said he had. Rayshell was then asked to go over the affidavit.

In response to Crosby's direct examination about the affidavit, Rayshell testified he did not know whether Kern knew anything about chiropractic care or the orthopedic tests performed on Crosby. Rayshell further testified he concluded from reading the affidavit that Kern never examined Crosby personally and it did not appear that he had read her medical records closely. In Rayshell's opinion, a doctor could be found to say whatever the person hiring him wanted him to say, including that the treatment the patient received was not necessary. Rayshell admitted Kern stated in his affidavit that he approved of some of the treatment Crosby had received from Rayshell. Kern's affidavit also stated, however, that Crosby should have reached maximum medical improvement within six to nine months. Rayshell noted that Crosby released herself from his care less than six months after he began treating her. According to Rayshell, Kern's affidavit stated there was no evidence Crosby suffered from anything other than a self-limiting, soft tissue injury. Rayshell disputed this opinion and referred to tests showing Crosby had herniated discs. Rayshell stated that Kern's diagnosis of Crosby was an example of how expert doctors write things with a jury in mind.

After the close of Crosby's direct examination of Rayshell, Minyard moved to admit Kern's affidavit into evidence. Crosby objected on the ground that the affidavit was hearsay. The trial court overruled the objection and admitted the affidavit.

During Minyard's cross-examination of Rayshell, Minyard asked about Crosby's general medical condition. Rayshell stated Crosby suffered from degenerative spinal problems such as spondylosis and osteoporosis due to advanced age. It was also noted that Crosby suffered from spinal stenosis and disc desiccation. When asked whether the spinal manipulation treatments Crosby received from him were

standard for a seventy-three year old woman, Rayshell responded they were if they were medically necessary. Although Rayshell did not specifically refer to Kern's affidavit during cross-examination, the affidavit states that Crosby suffered from "multi-level degenerative changes and problems throughout the spine of a structural nature" and, in Kern's opinion, "manipulative care is contraindicated" at Crosby's age.

■ Crosby contends the trial court erred in admitting Kern's affidavit because the statements made in the document are hearsay. *See Lewallen v. Hardin*, 563 S.W.2d 356, 357 (Tex.Civ.App.-Dallas 1978, no writ) (affidavits are inadmissible hearsay upon final trial of a case). Minyard does not dispute that the affidavit contains hearsay but argues the document, though otherwise inadmissible, was properly admitted under rule 107 of the Texas Rules of Evidence. Rule 107, entitled the "Rule of Optional Completeness," states that "[w]hen part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence...." TEX.R. EVID. 107. Rule 107 is designed to guard against the possibility of confusion, distortion, or false impression that could be created when only a portion of evidence is introduced. *See Grunsfeld v. State*, 813 S.W.2d 158, 163 (Tex.App.-Dallas 1991), *aff'd*, 843 S.W.2d 521 (Tex. Crim.App.1992). There are two threshold requirements for the application of the rule. First, some portion of the matter sought to be "completed" must have actually been introduced into evidence. *See Washington v. State*, 856 S.W.2d 184, 186 (Tex.Crim.App.1993); *Mendiola v. State*,

61 S.W.3d 541, 545 (Tex.App.-San Antonio 2001, no pet.). Merely referring to a statement does not invoke the rule. *See Goldberg v. State*, 95 S.W.3d 345, 386 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd). Second, the party seeking to complete the matter must show that the remainder being offered under rule 107 is on the same subject and is necessary to fully understand or explain the matter. *See Mendiola*, 61 S.W.3d at 545.

Even assuming Rayshell's testimony about the contents of Kern's affidavit was sufficient to meet the first requirement for the application of rule 107, we conclude Minyard clearly failed to meet the second requirement. Minyard has not shown why it was necessary to admit the affidavit to explain or understand the portions referred to by Rayshell. Although Rayshell discussed many of the opinions set forth in the affidavit and his reasons for disagreeing with them, Minyard has made no attempt to show how Rayshell's testimony could have confused or misled the jury regarding the contents of Kern's affidavit or its meaning. Furthermore, Minyard has not contended that Rayshell misrepresented the statements in the affidavit in any way. Because Minyard failed to meet the second requirement for the application of rule 107, the trial court erred in admitting the document.

■ Having concluded the trial court erred in admitting the affidavit, we must now determine whether the error was harmful. In other words, we must determine whether the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). Erroneous rulings on the admissibility of evidence are ordinarily not reversible where the evidence is cumulative and not controlling on a material issue dispositive of the case.

*Id.* The error is harmless if other competent evidence of the fact in question appears elsewhere in the record. *Id.* at 397; *Cash America Intern., Inc. v. Hampton Place, Inc.*, 955 S.W.2d 459, 463 (Tex.App.-Fort Worth 1997, pet. denied).

■ In her appeal, Crosby contends the affidavit's admission was harmful because it was the only evidence refuting the reasonableness and necessity of her medical care and it was allowed to go unchallenged. Kern's opinions were directly challenged by Rayshell, however, when he stated that his treatment of Crosby was appropriate and Kern's diagnosis of Crosby was not consistent with her test results. Indeed, the jury could not have relied on Kern's assessment of Crosby's medical condition when it rendered its verdict because it awarded her even less money for past medical care than what Kern stated was reasonable and necessary.

Crosby also complains she had no opportunity to cross-examine Kern about his credibility, bias, motive, education, training, and experience. All of these topics, however, were discussed by Rayshell either directly or by implication. Moreover, because Kern was never called as a witness, he had no opportunity to dispute Rayshell's statements that, as an expert hired for trial, Kern was careless and merely stated the opinions he was hired to say.

Before Kern's affidavit was admitted into evidence, Crosby elicited testimony from her own medical care provider, Rayshell, about a substantial amount of the affidavit's content. During Rayshell's cross-examination after the trial court erroneously admitted the affidavit, Rayshell testified without objection about the degenerative problems in Crosby's spine noted by Kern in the affidavit. In examining the record as a whole, we conclude the trial court's error in admitting Kern's affidavit did not contribute to or cause the rendition of an improper judgment. We resolve Crosby's issue against her.

We affirm the trial court's judgment.