The STATE of Texas, Appellant,

v.

STATE STREET BANK AND TRUST COMPANY and Brinker International Payroll Company, L.P., Appellees.

No. 05–10–00306–CV.

Court of Appeals of Texas, Dallas.

Feb. 7, 2012.

Clint Alfred Harbour, Asst. Atty's Gen., Darby Venza, Office of Atty. Gen., Austin, for Appellant.

Clinton Schumacher, Matthew Michiel Hurt, Locke Lord Bissell & Liddell LLP, William Scott Hastings, Locke, Liddell & Sapp, L.L.P., Dallas, for Appellees.

Before Justices MORRIS, O'NEILL, and FILLMORE.

## OPINION

Opinion By Justice MORRIS.

This is an appeal from the trial court's judgment rendered after the jury's award of condemnation damages to State Street Bank and Trust Company and Brinker International Payroll Company, L.P. The State of Texas asserts three issues generally contending that the trial court erred in admitting improper evidence of damages and the evidence was insufficient to support the amount of damages awarded. Concluding there is no reversible error

shown, we affirm the trial court's judgment.

## I.

As part of an expansion plan for a portion of I-635 in north Dallas, the State of Texas condemned a 14,741 square foot strip of land along the north side of Brinker International Payroll Company, L.P.'s corporate headquarters.[1] The trial court appointed a panel of special commissioners to assess the damages caused by the condemnation. Following a hearing, the commission awarded damages to appellees in the amount of $1,748,000. The State filed objections to the award and demanded a jury trial.

At trial, the central issue was the damage caused to the remainder of appellees' property. Both sides presented testimony about the effect of the taking on the value of the corporate campus abutting the condemned strip. The State conceded the condemnation would cause slight damage to the remainder of the property and that there would be costs associated with curing or mitigating the parking and traffic circulation problems created by the taking. The State's expert witness estimated the total damages to the remainder caused by the taking was either $847,857 or $1,114,576 depending upon what method of valuation was used.

Appellees presented the testimony of several witnesses who opined on the cost to cure the parking and traffic flow problems as well as the effect of the taking on the value of the remainder. Appellees' evidence included testimony showing that the cost to cure was $1,004,745 and the total damages incurred by appellees would exceed $4 million. After hearing the evidence, the jury returned a verdict awarding appellees $385,424 for the value of the land taken and $3,229,745 as compensation for the damages to the remainder of the property caused by the condemnation. The trial court signed a judgment in accordance with the jury's verdict awarding appellees $3,747,651.27 including prejudgment interest. The State brought this appeal.

## II.

The State asserts three issues challenging the trial court's judgment. In its first two issues, the State contends the trial court erred in admitting evidence of non-compensable damages as well as evidence of damages determined by an inappropriate methodology. In both issues, the State focuses entirely on the testimony of appellees' expert witness, Michael Massey. Even assuming the State's arguments in its first two issues have merit and Massey's testimony was inadmissible, appellees contend the testimony of the other witnesses at trial was sufficient to support the amount of damages awarded. We agree. Accordingly, without reviewing the State's complaints about the evidence provided by Massey, we address the State's third issue challenging the general sufficiency of the evidence to support the damages awarded.

In its third issue, the State contends there is no evidence or insufficient evidence to support the jury's award of $3,229,745 for damages caused to the remainder of appellees' property.[2] The test of legal sufficiency is whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We may sustain a no-

---

1. Brinker leases the property. State Street Bank is the trustee of the owner of the property.

2. The State does not challenge the $385,424 awarded for the value of the land taken.

evidence point only if the record reveals the complete absence of a vital fact, the evidence conclusively proves the opposite of a vital fact, or if the only evidence of a vital fact is barred from consideration or is no more than a scintilla. *See id.* at 810. When reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986) (op. on reh'g). We may set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

■■■ The Texas Constitution requires the State to compensate landowners when it takes property for public use. *See County of Bexar v. Santikos,* 144 S.W.3d 455, 459 (Tex.2004). If the State condemns only part of a tract of land, the State must not only compensate the landowner for the part of the property taken but must also pay for any resulting damage to the remainder. *Id.* Damages to the remainder of the property are calculated by ascertaining the market value of the remainder immediately before and immediately after the condemnation, taking into consideration the nature of any improvements and the use of the land taken. *See Interstate Northborough P'ship v. State,* 66 S.W.3d 213, 218 (Tex.2001). The three traditional approaches to determining market value are the comparable sales method, the cost method, and the income method. *See City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 182 (Tex.2001). The income approach to value is appropriate when the property would, in the open market, be priced according to the income it generates. *Id.* at 183. The present value

of an income-producing property is calculated by estimating the property's future income and applying a capitalization rate. *Id.*[3] In addition, the State must pay for special repairs and mitigation costs that are not reflected in the lost market value. *See Santikos,* 144 S.W.3d at 459.

At trial, the parties generally agreed that the value of the strip of land taken by the State was $385,524. The parties also agreed that appellees would incur costs related to the parking and traffic flow problems created by the State's taking. Appellees presented evidence that the cost to cure the issues created by the taking would be $1,004,745 and the State does not challenge this evidence on appeal.

■■■ The focus of the State's challenge is on the evidence presented to show the market value of the remainder of the property after the taking. Because the property at issue was used as a corporate campus with leased office space, one of the methods used to calculate the property's market value was the income method. The State's expert witness, Bryon Hinton, testified that the value of the entire property based on the income method before the taking was $21,947,831. Hinton further testified that the impact of the taking would be slight and the value of the entire property based on the income method after the taking would be $20,714,550. After subtracting the value of the land taken by the State, $385,424, the damage to the income value of the remainder, according to Hinton's calculations, would be $847,857.

The decrease in value under Hinton's calculations was based on the costs associated with curing or mitigating the problems caused by the taking and a .25% increase in the income capitalization rate.

**3.** The capitalization rate may be defined as the rate of interest investors would require as a return on their money before they would invest in the income-producing property, taking into account all of the risks involved in the particular enterprise. *See Polk County v. Tenneco, Inc.* 554 S.W.2d 918, 921 (Tex. 1977).

Hinton testified that he increased the capitalization rate because the property would be slightly less desirable after the taking and, therefore, constitute a riskier investment. Although Hinton conceded the property would be slightly less desirable, he stated that he did not believe the lease rate for the property would decrease.

In contrast to Hinton's testimony, appellees presented the testimony of Jerry Averyt who stated that he believed the lease rate of the property would be reduced by 20%. According to Averyt, appellees' property before the taking was unique in the area because of its park-like setting and natural "buffer zone" of trees and grass between the buildings and the highway. After the taking, the buffer zone would be eliminated, putting the buildings much closer to the highway and frontage road and making them similar to many other buildings in the area. Averyt stated that the impact of the taking on the desirability of appellees' lease space would be "dramatic."

Although Averyt did not calculate the total amount of damages that a reduction in the rental rate would cause, counsel for appellees questioned Hinton, the State's appraisal expert, about how a rental rate reduction would affect his damage calculations. On cross-examination, Hinton conceded that if the rental rate dropped by only 10% after the taking, the damage to the remainder of the property would be $4,919,727 of which $4,853,527 would be attributable to a loss of income value. Hinton refused to agree that this was the correct measure of damages and stated that a decrease in the rental rate would eliminate the need to increase the capitalization rate. He acknowledged, however, that a .25% increase in the capitalization rate together with a 10% reduction in the rental rate would, under his methodology, result in $4,919,727 in damages to the remainder.

The State argues that Averyt provided no support for his opinion that the rental rate would be reduced after the taking. Essentially, the State contends that Averyt's testimony is conclusory and speculative. Conclusory or speculative evidence will not support a judgment. *See Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 232 (Tex. 2004). Expert opinions must have a reasoned basis which the expert, because of his knowledge, skill, experience, training, or education, is qualified to state. *See Burrow v. Arce,* 997 S.W.2d 229, 236 (Tex. 1999).

The Texas Supreme Court addressed the identical type of damages claimed by appellees in *Interstate Northborough Partnership v. State. See Interstate,* 66 S.W.3d at 221. In *Interstate,* the property owners sought damages based on the State's condemnation of a portion of the land that served as a buffer zone between its building and the highway. *Id.* at 217. The supreme court held that when a property is unique because of its park-like setting and the existence of a buffer zone, evidence of damages caused by increased proximity to the highway was properly admissible. *Id.* at 223.

At trial, Averyt testified that he was a commercial real estate broker who had been working in the industry in the Dallas area for over thirty-two years. Averyt stated that his current job involved representing tenants looking to lease properties and office space and that he was familiar with the buildings in the area of appellees' property. In addition, he had researched buildings in the area of the same size and general nature as those on appellees' property. Averyt testified that appellees' property had always been considered of high quality because of its unique campus-

like setting and natural buffer zone. Averyt also stated that, largely because of its unique setting, appellees' property would be graded as a "high B" property. Averyt testified that the State's condemnation of the strip of land between the buildings and the highway would eliminate the buffer zone and appellees' property would lose its unique character. According to Averyt, the change in the property's character would cause it to be downgraded from a "high B" to a "B" or "B minus" and this downgrade would result in a 20% reduction in the rental rates. After reviewing Averyt's testimony, we conclude that he gave a reasoned basis for his opinion and, therefore, it amounts to some evidence supporting a finding that the rental rate for the property would be reduced after the taking.

■ The jury's award of $3,229,745 demonstrates that it did not find there would be both a 20% rental rate reduction and an increase in the capitalization rate. During appellees' cross examination of Hinton, appellees showed that a rental rate reduction of only 10% together with a .25% increase in the capitalization rate would result in a $4,853,527 reduction in the income value of the property. Although the State challenges the amount of damages awarded, even the State's expert conceded that the property would become somewhat less desirable after the taking. The jury was free to conclude that the decrease in desirability would result either in some reduction in the rental income or some increase in the investment risk or both. The State does not challenge appellees' evidence showing that it would cost them $1,004,745 to cure the parking and traffic problems created by the taking. Accordingly, the evidence need only support a $2,225,000 reduction in the income value of the property. The award was well within the range of evidence presented at trial. *See Gulf States Utils. Co. v. Low,* 79 S.W.3d 561, 566 (Tex.2002).

After reviewing the record and the evidence presented at trial, we conclude a reasonable and fair-minded jury could have reached the verdict that was reached in this case. We further conclude that the amount of the award was not against the great weight and preponderance of the evidence. We resolve the State's third issue against it.

Because we have concluded the evidence presented at trial was sufficient to support the judgment even without the testimony of appellees' expert witness, Michael Massey, any error by the trial court in allowing Massey's testimony was harmless. *See Crosby v. Minyard Food Stores, Inc.,* 122 S.W.3d 899, 904 (Tex.App.-Dallas 2003, no pet.) (error is harmless if other competent evidence of fact in question appears elsewhere in record).

We affirm the trial court's judgment.