COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | | |
|---|---|---|---|
| JERRY MORENO, | § | No. 08-12-00078-CV | |
| Appellant, | § | Appeal from the | |
| v. | § | 205th Judicial District Court | |
| TEXAS DEPARTMENT OF TRANSPORTATION, | § | of El Paso County, Texas | |
| | § | (TC# 2006-4096) | |
| Appellee. | § | | |

## O P I N I O N

In this wrongful-termination action, Jerry Moreno appeals the trial court's take-nothing judgment in favor of the Texas Department of Transportation (TxDOT). In four issues, Moreno argues the trial court erred in granting a directed verdict on his discrimination and due process claims and in excluding evidence of discrimination. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Moreno was born in Mexico in 1956 and began working for TxDOT in 1988. For fifteen years, Moreno worked under the supervision of an area engineer named Carlos Ahumada. While under Ahumada's supervision, Moreno received good employee evaluations, often exceeding required standards, and was never disciplined for his work performance. When Ahumada retired from TxDOT in August 2003, he was succeeded by Tim Twomey.

Twomey, unlike Ahumada, was critical of Moreno's job performance. Approximately six

months after taking over, Twomey removed Moreno from a project and demoted him. Moreno's job performance improved, however, and he was restored to chief construction inspector and assigned to the Traffic Signal Synchronization project in late 2004.

Problems soon arose between Moreno and some of the employees of the project's contractor, Tri-State Electrical. Moreno was accused of, among other things, abusive behavior and unprofessional conduct. These allegations were substantiated in an investigation conducted by a TxDOT internal auditor. In his report dated June 30, 2005, the auditor concluded that Moreno had violated certain department policies and that Moreno's behavior toward crew leaders and workforce was demeaning and patronizing and therefore did "not meet the standards of being congenial and professional." Although the field office recommended that Moreno be demoted and placed on probation, human resources personnel in Austin recommended that Moreno be terminated because his actions toward the Tri-State employees "[were] so outside the scope, so unprofessional and disrespectful, [that] [TxDOT] could not afford to have him ever do that again." Moreno was terminated in August 2005, when he was forty-nine years' old, and he was eventually replaced by a thirty-two-year-old Hispanic male named Julian Cereceres.

Moreno filed an internal appeal of his termination. In connection with the appeal, Moreno attended an administrative hearing before a hearing officer. Moreno's internal appeal was denied, as was the charge of discrimination that Moreno filed with the EEOC. Thereafter, Moreno filed this suit against TxDOT, alleging that he was discriminated against on the bases of age and national origin in violation of the Texas Commission on Human Rights Act (TCHRA) and denied due process as guaranteed by Section 19, Article I of the Texas Constitution.

At trial, Moreno could not testify to any particular discriminatory comments, directed at

him or others, that he heard while employed at TxDOT. Moreno did testify that another TxDOT employee told him that Twomey was "a racist" and that Twomey did not like him and was going to hurt him, "[i]f not now, later." When asked if he believed that Twomey was critical of him because Twomey was a racist and hateful of his national origin, Moreno initially testified, "[n]ot of my national origin but with me personally." Moreno later testified that Twomey treated him badly because Twomey did not like both his personality and national origin. Although Moreno acknowledged that Twomey was responsible for restoring him back to his position of chief inspector and assigning him to the synchronization project, Moreno believed nevertheless that Twomey and the Tri-State employees conspired against him.

## EXCLUDING EVIDENCE

We first address Moreno's third issue to determine whether we can appropriately consider the evidence Moreno contends the trial court improperly excluded in our analysis of the remainder of his issues. Moreno argues the trial court erred in excluding evidence proving "that other employees, similarly situated, who were not members of [his] national origin class, and who had engaged in more egregious conduct than [he], were not terminated and were allowed the benefits of progressive discipline." TxDOT counters that "[Moreno] failed to make a threshold showing that the proffered evidence was admissible." We agree.

### *Standard of Review*

We review a trial court's decision to exclude evidence for an abuse of discretion. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001). A trial court abuses its discretion in excluding evidence if it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002).

3

*Discussion*

Moreno complains specifically of two evidentiary rulings made by the trial court.

## 1. Disciplinary Records

At trial, Moreno sought to introduce into evidence several records concerning disciplinary action taken by TxDOT against other employees. Moreno argued the records were admissible because TxDOT opened the door to their admissibility by asking him if he had obtained any information substantiating his discrimination claims. TxDOT objected on the following bases:

> [Moreno] cannot lay predicate for the admissability [sic] of any of these documents under the current case law and all the cites that are up to 909 clearly specify that the circumstances have to be nearly identical and just this small bit of evidence we have seen, that is not the case and moreover, [Moreno] has no personal knowledge whatsoever of any of the circumstances.
> The argument that the door somehow has been opened and all the rules of admissability [sic] have gone by the wayside is not a sustainable argument, Your Honor.

The trial court sustained TxDOT's objection without identifying the basis for its ruling.

Moreno asserts the trial court erred in excluding the records because evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence by leaving a false impression with the jury that invites the other side to respond.[1] As support for his argument, Moreno relies on Justice Teague's dissent in *King v. State*, 773 S.W.2d 302 (Tex.Crim.App. 1989). In that case, Justice Teague—citing the predecessor to Texas Rule of Evidence 107—stated:

> The concept of an attorney 'opening the door' to what would otherwise be inadmissible evidence or testimony on cross-examination is based upon the fact that once the opposing party has opened an inquiry into a particular subject, that party cannot complain when the other party desires to go into the details of that subject.

---

[1] Moreno does not argue that the evidence was admissible on some other basis.

*King*, 773 S.W.2d at 307 (J. Teague dissenting). But a party seeking admission of otherwise inadmissible evidence pursuant to Rule 107 must satisfy two threshold requirements.[2] *Crosby v. Minyard Food Stores, Inc.*, 122 S.W.3d 899, 903 (Tex.App.--Dallas 2003, no pet.). "First, some portion of the matter sought to be 'completed' must have actually been introduced into evidence." *Id.* at 903. "Merely referring to a statement does not invoke the rule." *Id.* "Second, the party seeking to complete the matter must show that the remainder being offered under rule 107 is on the same subject and is necessary to fully understand or explain the matter." *Id.*

Moreno did not meet the first requirement for the application of Rule 107. TxDOT did not introduce the disciplinary records into evidence, and the mere allusion to them during Moreno's cross-examination is insufficient to invoke the rule. *See Crosby*, 122 S.W.3d at 903. Because Moreno failed to meet the first requirement for the application of Rule 107, the trial court did not err in excluding the disciplinary records from evidence. Accordingly, Moreno has not shown that the trial court abused its discretion in denying admission of the records under Rule 107.

## 2. Deposition Testimony

Moreno also sought to introduce into evidence certain portions of the deposition testimony of Debbie Moore, the then-deputy director of TxDOT's Human Resources Division. In particular, Moreno sought the admission of testimony related to the same disciplinary records previously excluded by the trial court. TxDOT objected on the basis that Moreno had not laid the predicate establishing that Moore was qualified to testify to those records. The trial court agreed, ruling:

---

[2] Rule 107, entitled "Rule of Optional Completeness" states, in pertinent part, that "[w]hen part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence . . . ." TEX.R.EVID. 107.

5

Now you have presented a written deposition of . . . Moore. She is not present here. She is not able to meet the predicate that is still necessary to introduce these cases that you feel are similarly situated.

Moreno advances two reasons why the trial court erred in so ruling. Neither is persuasive, however.

First, he contends that the deposition testimony was admissible because "TxDOT waived any right to object during . . . trial . . ." by failing to cross-examine Moore at her deposition and submit objections to the deposition questions. But it was proper for TxDOT to object to the admissibility of Moore's testimony when it was offered at trial. *Nat'l Bankers Life Ins. Co. v. Rosson*, 400 S.W.2d 366, 370-71 (Tex.Civ.App.--Dallas 1966, writ ref'd n.r.e.); *City of Magnolia Park v. Crooker*, 252 S.W. 341, 342 (Tex.Civ.App.--Beaumont 1923, no writ).

Second, Moreno argues that the deposition testimony was admissible under Texas Rule of Evidence 801(e)(2) as an admission by a party-opponent. But Moreno never raised this argument at trial. Consequently, he failed to preserve it for appellate review. TEX.R.APP.P. 33.1; *Edwards v. Tex. Employment Comm'n*, 936 S.W.2d 462, 466 (Tex.App.--Fort Worth 1996, no writ).

Moreno has not shown that the trial court abused its discretion in excluding Moore's deposition testimony from evidence.

Moreno's third issue is overruled.

## DIRECTED VERDICT

In his remaining issues on appeal, Moreno contends the trial court erred in granting TxDOT's motion for a directed verdict on his discrimination claims and due process claim.

### *Standard of Review*

A party is entitled to a directed verdict when reasonable minds can draw only one

6

conclusion from the evidence.  *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978).  Our task is to determine whether there is any probative evidence that raises fact issues on the material questions presented.  *White v. Sw. Bell Tel. Co., Inc.*, 651 S.W.2d 260, 262 (Tex. 1983); *Collora*, 574 S.W.2d at 68.  In carrying out our task, we consider the evidence in the light most favorable to the party against whom the verdict is instructed, discarding all contrary evidence and inferences. *White*, 651 S.W.2d at 262; *Collora*, 574 S.W.2d at 68.

### *Discrimination Claims*

In his first and second issues, Moreno argues the trial court erred in granting a directed verdict on his age and national-origin discrimination claims because "[he] established a prima facie case to the jury."  We disagree.

Our analysis of Moreno's discrimination claims is governed by the burden-shifting rubric enunciated in *McDonnell Douglas*.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973); *Acosta v. Gov't Employees Credit Union*, 351 S.W.3d 637, 641 (Tex.App.--El Paso 2011, no pet.).  Under this rubric, Moreno bears the initial burden to establish a *prima facie* case of discrimination.  *Acosta*, 351 S.W.3d at 641.  If Moreno discharges his obligation, the burden shifts to TxDOT to articulate a legitimate, nondiscriminatory reason for his termination.  *Id*.  If TxDOT satisfies its obligation, the burden shifts back to Moreno to show that the stated reason was a pretext for discrimination.  *Id*.

To establish a *prima facie* case of discrimination under the TCHRA, Moreno must show that he was:  (1) a member of the statutorily protected class; (2) qualified for his employment position; (3) terminated by TxDOT; and (4) treated less favorably than similarly situated members of the unprotected class.  *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008); *Reeves v.*

7

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); TEX.LAB.CODE ANN. § 21.101 (West 2006).

### 1. Age Discrimination

Moreno established a *prima facie* case of age discrimination, and TxDOT does not argue to the contrary.[3] Moreno thus insists that a directed verdict was improper because "[TxDOT] failed to produce any evidence indicating that there was a legitimate, non-discrimination reason for the termination of employment." But TxDOT contends—and rightly so—that Moreno was terminated for legitimate, non-discrimination reasons, *i.e.*, acting unprofessionally toward Tri-State's employees and verbally abusing them. TxDOT's offer of legitimate reasons for Moreno's termination eliminated the presumption of discrimination created by Moreno's *prima facie* showing and shifted the burden back to Moreno to show that TxDOT's stated reasons were a pretext for discrimination. *See Acosta*, 351 S.W.3d at 641.

Moreno counters that TxDOT's stated reasons for his termination were pretextual because Ahumada's testimony established that he was a good, courteous, and respectful inspector. Ahumada's testimony suggests that Moreno did not commit the acts alleged by Tri-State's employees and that TxDOT selectively investigated and terminated Moreno. When considered in the light most favorable to Moreno, Ahumada's testimony constitutes some evidence that the reason proffered by TxDOT is false. But this evidence does not, by itself, suggest that Moreno's age and national origin were motivating factors for his termination. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001)(holding that "a motivating factor" is the plaintiff's standard of causation in a TCHRA unlawful-employment practice claim). Moreno bore the

---

[3] Moreno showed that: (1) he 40 years of age and older; (2) qualified for his employment position; (3) terminated by TxDOT; and (4) replaced by someone younger. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 632 (Tex. 2012).

burden to show both that the reason proffered by TxDOT was "false, *and that* discrimination was the real reason." *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) [Emphasis in original]. As demonstrated above in our recitation of the facts, Moreno offered no evidence showing that TxDOT management was motivated to terminate him because of his age or national origin.

We conclude that there is no probative evidence that Moreno's age was the real reason for his termination. Accordingly, the trial court did not err in granting a directed verdict on Moreno's age-discrimination claim.

Moreno's first issue is overruled.

## 2. National-Origin Discrimination

To establish a *prima facie* case of discrimination based on national origin, Moreno was required to establish, among other things, that he was a member of a statutorily protected class and treated less favorably than similarly situated members of the unprotected class. *See Reyes*, 272 S.W.3d at 592; *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106. TxDOT moved for a directed verdict on the ground that Moreno failed to establish that he was replaced by someone outside of his protected class. On appeal, Moreno argues persons of Mexican ancestry are the member of his protected class and, because there was no evidence that Cereceres was of Mexican ancestry, he met his burden in establishing a *prima facie* case of discrimination based on national origin. In other words, Moreno is arguing that a person of Hispanic origin is not in his protected class. We are not persuaded by Moreno's argument.[4]

First and foremost, Moreno—not TxDOT—bore the burden to establish a *prima facie* case

---

[4] We note that, in his petition, Moreno identified himself as "a Hispanic male."

9

of discrimination based on national origin. If Moreno was proceeding under the theory that Cereceres was not within his protected class because Cereceres was not of Mexican ancestry, then it was incumbent upon Moreno to establish Cereceres's ancestral origin. Moreno presented no such evidence. Second, Moreno fails to cite a single case in which a court has held that discrimination based on one's "national origin" needs to be linked directly to a particular "country" or "nation" of origin. Instead, Moreno relies on the following statement by Justice Marshall in *Espinoza v. Farah Manufacturing Co., Inc.* for this proposition: "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." 414 U.S. 86, 88, 94 S.Ct. 334, 336, 38 L.Ed.2d 287 (1973). But Moreno's reliance on Justice Marshall's statement is misplaced.

"First, [the statement] . . . is *dicta*, and does not represent the Supreme Court's holding." *Kanaji v. Children's Hosp. of Philadelphia*, 276 F.Supp.2d 399, 401 (E.D. Pa. 2003). Second, the holding actually supports a broader interpretation of "national origin" than the narrow one advanced by Moreno. *Id.* In *Espinoza*, the Supreme Court held that though Title VII applied to aliens, *i.e.*, individuals who are not citizens of the United States, employed in the United States and protected them from discrimination on the basis of race, religion, color, sex, or national origin, the statute did not prohibit an employer from discriminating on the basis of citizenship or alienage because alienage itself was not a prohibited classification. 414 U.S. at 87, 95, 94 S.Ct. at 336, 340. In reaching this holding, the Supreme Court made clear that "refus[ing] to hire aliens of Mexican or Spanish-speaking background while hiring those of other national origins" would be illegal as would "hiring aliens of Anglo-Saxon background but refusing to hire those of Mexican or Spanish ancestry." *Id.* at 92 n.5, 95, 94 S.Ct. at 339, 340. As the federal district court in

*Kanaji* observed:

> By suggesting that a refusal to hire people of 'Spanish-speaking background' would constitute discrimination on the basis of 'national origin,' or that insisting on an 'Anglo Saxon background' as a condition of employment is also prohibited, it is clear that the Supreme Court would not require that one's 'national origin' be linked directly to a specific country or nation. Rather, this implies that the term 'national origin' must embrace a broader class of people, and that the term is better understood by reference to certain traits or characteristics that can be linked to one's place of origin, as opposed to a specific country or nation.

276 F.Supp.2d at 401-02. The district court also observed:

> In finding a lack of evidence of discrimination on the basis of national origin, the Supreme Court found it significant that the worker hired in place of the plaintiff in Espinoza was 'a citizen with a Spanish surname.' *Id*. at 93, 94 S.Ct. at 334. This, too, suggests that 'national origin' should be interpreted broadly, and should embrace groups of people not necessarily identified with a particular nation.

276 F.Supp.2d at 402 n.3.

We conclude that Moreno failed to meet his burden in establishing a *prima facie* case of discrimination based on his national origin. Accordingly, the trial court did not err in granting a directed verdict on Moreno's national-origin discrimination claim.

Moreno's second issue is overruled.

### III. Due Process

In his fourth and final issue, Moreno insists that he was denied due process of law when TxDOT terminated him illegally, arbitrarily, and capriciously. We disagree.

"The protections of procedural due process apply only to a threatened deprivation of a liberty or property interest." *Loftis v. Town of Highland Park*, 893 S.W.2d 154, 156 (Tex.App.--Eastland 1995, no writ). "An essential characteristic of a protected property interest is an entitlement under state law that cannot be removed except for cause. *Id*. at 156. "Under Texas law, an at-will employee has no protected property interest in continued employment."

11

*Loftis*, 893 S.W.2d at 156. Because Moreno was an at-will employee, he had no protected property interest in continued employment with TxDOT.

Moreno asserts that he had a property interest in continued employment with TxDOT as a "for cause" employee because TxDOT's policy provided that he could be terminated only after progressive disciplinary action was taken. However, absent express agreements addressing discharge protocols, statements about disciplinary procedures in an employee handbook or manual constitute no more than general guidelines and do not create contractual rights regarding those procedures. *Loftis*, 893 S.W.2d at 155-56. TxDOT's Human Resources Manual provides for both progressive disciplinary action and, "[i]n cases where behavior or performance problems are too severe for progressive disciplinary action," immediate disciplinary action. The manual makes clear that "[i]f at any time . . . behavior problems are considered cause for immediate disciplinary action, supervisors may take immediate disciplinary action . . . includ[ing] jumping steps in the progressive disciplinary process if approved . . . ." As is evident from this language, TxDOT had no contractual or express obligation to take progressive disciplinary action with an employee before terminating him. Therefore, it cannot be said that TxDOT's employment manual created any putative property interest in continued employment that altered its at-will employment relationship with Moreno. *See Loftis*, 893 S.W.2d at 155-56.

Moreno also asserts that even if immediate termination was appropriate, TxDOT was nonetheless required to have done the following before terminating him: (1) provide him with notice of the charges against him; (2) explain the charges to him; (3) give him the opportunity to respond to the charges; and (4) offer him a meaningful post-termination hearing. As support for his assertion, Moreno cites *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84

12

L.Ed.2d 494 (1985). But Moreno's reliance on *Loudermill* is misplaced. There, the Supreme Court held that a public employee dismissible only for cause was entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing. *Loudermill,* 470 U.S. at 545-46, 105 S.Ct. at 1495. Here, by contrast, Moreno was an at-will employee subject to dismissal without cause. Accordingly, Moreno was not entitled to the same constitutional protections afforded to the public employee in *Loudermill*.

We conclude that Moreno did not show he was denied due process of law under Section 19, Article 1 of the Texas Constitution. Accordingly, the trial court did not err in granting a directed verdict on his due-process claim.

Moreno's fourth issue is overruled.

## CONCLUSION

Having overruled all four of Moreno's issues, we affirm the trial court's judgment.

December 18, 2013

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.