**Affirmed and Opinion filed August 28, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00511-CV

---

### RANDALL REMALEY, Appellant

### V.

### TA OPERATING LLC D/B/A TRAVELCENTERS OF AMERICA, Appellee

---

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2015-21144**

---

### O P I N I O N

Randall Remaley challenges the trial court's grant of no-evidence and traditional summary judgment in favor of TA Operating LLC d/b/a TravelCenters of America on his employment-related claims for gender and age discrimination under the Texas Commission on Human Rights Act ("TCHRA"). *See* Tex. Lab. Code Ann. §§ 21.001-.556 (Vernon 2015 & Supp. 2017).

To demonstrate a prima facie case of employment discrimination based on alleged disparate treatment arising from his disciplinary termination, Remaley had

to proffer evidence that he was treated less favorably than similarly situated persons who were female or younger. Because he proffered no evidence on this essential element of his prima facie case, we affirm the trial court's grant of no-evidence summary judgment in favor of TA Operating.

## BACKGROUND

This appeal arises from the termination of Remaley's employment as the general manager of a restaurant located at the Travel Centers of America site run by TA Operating in Baytown, Texas.

TA Operating employed Remaley for eight years until his supervisor, Field Manager Margie Swisher, fired him on March 10, 2014. Remaley was 55 years old when he was fired. Swisher replaced him with a 45-year-old female.

The parties sharply dispute the reason for Remaley's March 2014 termination.

According to Remaley, his termination was the culmination of a campaign against him that began when Swisher became his supervisor in late 2013. Remaley contends that, before Swisher's arrival, he ran a "relatively successful" restaurant and had a positive working relationship with the male field managers who preceded her. The positive working relationship ended upon Swisher's arrival. Remaley contends that he clashed frequently with Swisher because she "treated Remaley poorly," "often did not return Remaley's phone calls or emails," and "wanted to terminate Remaley when she was first introduced to him." Remaley further contends that TA Operating recruited his younger female replacement at least seven days before he was fired and offered his job to her three days before he was fired, which she accepted the same day the offer was made. The replacement's start date was March 13, 2014 — three days after Remaley was fired.

TA Operating contends it fired Remaley based on his treatment of a female

2

server at the restaurant on March 4, 2014, and subsequent events. According to TA Operating, Swisher called Remaley on March 4 after the server called Swisher to report that Remaley had threatened to fire her over a work schedule issue. TA Operating contends that Remaley "did not like that [the server] . . . had contacted Swisher, his boss, about his conduct." On March 5, 2014, Swisher received email notifications of two customer hotline complaints from the Baytown restaurant; two restaurant patrons reported that Remaley was "verbally abusing" the server and had caused her to cry in front of customers. Swisher interviewed one of the complaining customers in person on March 6 and contacted the other by phone; she also interviewed the server and the restaurant's assistant general manager, who both reported that Remaley yelled at the server for contacting Swisher a day earlier and physically blocked her from leaving his office until she said she would not contact Swisher in the future.

According to TA Operating, Swisher determined that Remaley's treatment of the server violated company policy and warranted immediate termination of his employment; she informed him of his firing on March 10. TA Operating contends that Swisher did not consider Remaley's gender or age in deciding to fire him. It also points to Swisher's testimony that no general manager under her supervision had acted in a similar manner towards a server, and that she never had received customer hotline complaints before about another general manager's treatment of a server.

Remaley responds that Swisher already had decided to interview his replacement as of March 4, and had scheduled the interview to occur two days later. He contends TA Operating "began creating an exculpatory paper trail" and relied on "after-the-fact" evidence to justify his firing based on false statements. He further contends that "Swisher terminated other male managers under questionable

3

circumstances" and "did not interview male candidates for Remaley's position."

Remaley filed his original petition in April 2015, alleging that TA Operating violated the TCHRA in connection with his termination because TA Operating discriminated against him on the basis of gender and age. According to Remaley's petition, Swisher falsely told him that he was fired because he "manages 'through intimidation.'" He alleges as follows: "For the roughly six years [he worked] as a Restaurant General Manager, Remaley never received any complaints about his management style." Remaley contends he was subjected to disparate treatment based on his gender and age in connection with his termination because "even if [his management style] . . . was a legitimate concern, Remaley could have been disciplined or counseled, just like other employees, instead of being fired."

Following discovery, TA Operating filed a traditional motion for summary judgment and a separate no-evidence motion for summary judgment. With respect to gender discrimination, in its no-evidence motion TA Operating asserted that Remaley had no evidence he was treated less favorably than similarly situated employees who were not in his protected class. With respect to age discrimination, TA Operating asserted in its no-evidence motion that Remaley had no evidence he was treated less favorably on account of his age than others for nearly identical conduct.

The trial court signed a single order in December 2016, in which it granted both the traditional and no-evidence summary judgment motions without specifying particular grounds. Remaley timely appealed.

**ANALYSIS**

Remaley contends the trial court erred by (1) granting no-evidence and traditional summary judgment in favor of TA Operating on his claims for gender and

4

age discrimination; and (2) denying his motion to compel seeking documents pertaining to "adverse treatment of other male managers who were terminated and replaced by females." We address each issue in turn.

## I.     Summary Judgment on Gender and Age Discrimination Claims

### A.     We Apply the Standard of Review for No-Evidence Summary Judgment Motions

We review summary judgments *de novo*. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 156 (Tex. 2004). When, as here, the trial court grants the judgment without specifying the grounds, we will affirm if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

TA Operating moved for summary judgment on both traditional and no-evidence grounds. We resolve this case based on no-evidence grounds; therefore, we discuss only the standard of review pertinent to a no-evidence summary judgment motion.[1]

We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003).

The movant seeking a no-evidence summary judgment represents that there is no evidence of one or more of the essential elements of the claims for which the non-movant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i). We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight

---

[1]Because we resolve this appeal based on grounds asserted in TA Operating's no-evidence summary judgment motion, we do not address Remaley's appellate contention that portions of the evidence submitted with TA Operating's traditional summary judgment motion were inadmissible.

to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc.,* 118 S.W.3d at 751. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983)). More than a scintilla of evidence exists when reasonable and fair-minded people could differ in their conclusions based on the evidence. *Id.*

We apply this standard of review to the parties' contentions regarding Remaley's claims that TA Operating violated the TCHRA by discriminating against him on the basis of gender and age when TA Operating fired him.

### B. The Trial Court Properly Granted Summary Judgment Because Remaley Proffered No Evidence on an Essential Element of His Prima Facie Case

#### 1. Governing legal framework

An employer commits an unlawful employment practice under the TCHRA "if because of race, color, disability, religion, sex, national origin, or age the employer . . . discharges an individual . . . or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment . . . ." Tex. Lab. Code Ann. § 21.051(1). The protected class for age discrimination claims consists of persons 40 and older. *See id.* § 21.101.

Remaley contends that TA Operating violated section 21.051(1) when it terminated his employment, and that his age and gender were impermissible motivating factors in his termination. *See id.* § 21.125.

The TCHRA "provide[s] for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Id.* § 21.001(1). Texas

6

state courts look to analogous federal statutes and cases interpreting them to guide application of the TCHRA. *See, e.g., Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex. 2001) (citing *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)); *see also Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 583 (Tex. 2017).

"Texas courts follow the settled approach of the U.S. Supreme Court in recognizing two alternative methods of proof in discriminatory treatment cases." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012) (citing *Quantum Chem.*, 47 S.W.3d at 476). "The first method . . . involves proving discriminatory intent via direct evidence of what the defendant did and said." *Id*. "However, the High Court recognized that motives are often more covert than overt, making direct evidence of forbidden animus hard to come by." *Id*. "So to make matters easier for discrimination plaintiffs, the Court created the burden-shifting mechanism of *McDonnell Douglas*." *Id*. (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973)).

"Under this framework, the plaintiff is entitled to a presumption of discrimination if she meets the 'minimal' initial burden of establishing a prima facie case of discrimination." *Id*. (citing *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981), and *Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex. 2003) (per curiam)). "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case 'is not onerous.'" *Id*. (citing *Burdine*, 450 U.S. at 253).

"The *McDonnell Douglas* presumption is 'merely an evidence-producing mechanism that can aid the plaintiff in his ultimate task of proving illegal discrimination by a preponderance of the evidence.'" *Id*. (citing *Wright v. Southland Corp.*, 187 F.3d 1287, 1292-93 (11th Cir. 1999)). "The prima facie case 'raises an

7

inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id*. (citing *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978)). "Ultimately, if the defendant fails to 'articulate some legitimate, nondiscriminatory reason' for the employment decision, that presumption will be sufficient to support a finding of liability." *Id*. (citing *McDonnell Douglas*, 411 U.S. at 802).

### 2. Application of framework

Resolution of this appeal turns on defining and then applying the governing standard for establishing a prima facie case of gender-based or age-based employment discrimination arising from disparate treatment in connection with a disciplinary discharge. If Remaley cannot establish a prima facie case under the governing standard, then Remaley cannot prevail and the remainder of the *McDonnell Douglas* burden-shifting mechanism does not come into play. *See, e.g., Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 634.

The law is clear — and the parties do not dispute — that the prima facie case standard applicable in this disparate treatment context has four elements. The parties agree that Remaley satisfies the first three elements of the prima facie case because he was (1) a member of a protected class; (2) qualified for his position; and (3) subject to an adverse employment decision. *See, e.g., AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam); *Ysleta Indep. Sch. Dist. v. Monarrez,* 177 S.W.3d 915, 917 (Tex. 2005) (per curiam).

The parties' disagreement arises in connection with defining the fourth element of the prima facie case standard applicable in this context involving alleged disparate treatment arising from a disciplinary discharge.

Relying heavily on the intermediate appellate court opinion in *Rincones v.*

*WHM Custom Servs.*, 457 S.W.3d 221, 234 (Tex. App.—Corpus Christi 2015), *rev'd sub nom. Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572 (Tex. 2017), Remaley argues that the fourth element is **disjunctive** and encompasses two possibilities.

Remaley quotes *Rincones*, 457 S.W.3d at 234, for the proposition that he can satisfy the fourth element of his prima facie case and survive a no-evidence summary judgment motion by showing "'he was replaced by someone outside of the protected class, or he was treated less favorabl[y] than similarly situated members of the opposite class . . . .'" He continues: "For the fourth element, Remaley only needs to show that he was replaced by a younger female in order to establish a *prima facie* case of age or sex discrimination." Remaley contends he meets the fourth element because the evidence shows he was 55 when TA Operating replaced him with a 45-year-old female.

Remaley does not contend that he proffered evidence of a similarly situated TA Operating employee who was female or younger, and who engaged in similar conduct but was not fired. He acknowledged at oral argument that the record does not contain evidence of a similarly situated employee who was allowed to continue working. Instead, Remaley argues that he need not proffer such evidence to satisfy element four and establish his prima facie case.

For its part, TA Operating argues that the prima facie case's fourth element is satisfied only by evidence that Remaley "was treated less favorably than similarly-situated persons not in the protected class." It continues: "Throughout, Remaley has failed to name a comparator. When asked pointedly if he could identify any other General Manager [whom his supervisor] . . . treated differently, Remaley could not." According to TA Operating, "Remaley identified no General Manager of any age or gender who berated an employee publicly, intimidated the employee into not reporting him, disregarded his boss's directive that the employee be permitted to

9

report, was reported by the customer hotline, [and] who was treated better by [his supervisor] . . . ."

In resolving this disagreement over the fourth element's formulation, we note that no one-size-fits-all description of the prima facie case applies to every employment discrimination claim in every possible context. The Texas Supreme Court repeatedly has cautioned that "the precise elements of this prima facie showing vary depending on the circumstances." *Exxon Mobil Corp.*, 520 S.W.3d at 583; *see also Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 634, 638.

It follows that a disjunctive formulation of element four may be applicable in some circumstances but inapplicable in others. For example, an employee alleging gender discrimination based on disparate treatment arising from unequal pay could not meet element four by proffering evidence that the employee was replaced by someone outside of the protected class. *See, e.g., Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 393 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("For claims of disparate treatment, a prima facie case is made by showing that the plaintiff . . . (4) was treated less favorably than similarly situated persons not in the protected class."). Another employee alleging age discrimination in connection with a demotion potentially could satisfy element four with proof that the employee was replaced by someone younger or otherwise was demoted because of age. *See, e.g., Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 435 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The same employee alleging an accompanying but distinct age discrimination claim predicated on the manner in which a company-wide layoff was accomplished may not be required to show that the employee was replaced by someone younger. *See id.* at 436-37.

To take another example, the "replaced by someone outside the protected class" formulation of element four does not work for an age discrimination claim

10

predicated on allegations that the plaintiff was replaced by someone older than 40 but still younger than the plaintiff. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 309 (1996); *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 641-42. The appropriate element four inquiry is whether the plaintiff was "replaced by someone younger." *See Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 642. Remaley could not establish a prima facie case of age discrimination even under the alternative formulation of element four — "replaced by someone outside of the protected class" — for which he advocates on appeal because his replacement was 45 years old.

For this reason, we are not persuaded by Remaley's contention that he survives summary judgment merely because "case law . . . supports multiple ways to meet a prima facie case, including showing that the plaintiff was replaced by someone outside his/her protected group." His general characterization of the case law is correct as far as it goes — but it does not go far enough for Remaley to prevail because that case law tailors the elements of a prima facie case to particular circumstances presented by particular claims.

The circumstances at issue here involve claims of gender and age discrimination in employment predicated on alleged disparate treatment in connection with Remaley's termination by TA Operating. Focusing on these particular circumstances and claims, we follow binding Texas Supreme Court case law and hold that meeting the fourth element of the prima facie case required Remaley to proffer evidence tending to show he was treated less favorably than a similarly situated person who was female or younger. *See Exxon Mobil Corp.*, 520 S.W.3d at 583; *AutoZone, Inc.*, 272 S.W.3d at 592; *Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and

11

conduct." *Yselta Indep. Sch. Dist.*, 177 S.W.3d at 917 (citations omitted).

Remaley misplaces his reliance on the intermediate appellate court decision in *Rincones* when he argues for a different conclusion. The disjunctive formulation of element four quoted by the intermediate appellate court in *Rincones,* 457 S.W.3d at 234, includes a parenthetical that was omitted from element four as described in Remaley's brief. This parenthetical indicates that the alternative formulation of element four — "treated less favorabl[y] than similarly situated members of the opposite class" — specifically applies to "disparate treatment cases" like the one Rincones was pursuing. *See id*.

When the Texas Supreme Court issued its subsequent opinion in that case describing the elements of a prima facie showing for Rincones's disparate treatment claim, the supreme court omitted the disjunctive formulation of element four. Instead, the supreme court described the fourth element as a single requirement formulated as follows: "For Rincones to prevail here, he must first establish a prima facie case of race or national-origin discrimination by showing . . . [his employer] gave preferential treatment to a similarly situated employee outside the protected class." *Exxon Mobil Corp.*, 520 S.W.3d at 583.

In support of this single formulation of element four, the supreme court cited cases discussing the elements of disparate treatment cases involving allegations of gender and age discrimination. *Id*. at 583-84 (citing *AutoZone, Inc.*, 272 S.W.3d at 592, and *Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917); *see also AutoZone, Inc.*, 272 S.W.3d at 592 (Plaintiff suing for age discrimination predicated on disparate treatment in connection with disciplinary discharge for sexual harassment had to show he was "treated less favorably than similarly situated members of the opposing class."); *Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917 (Male plaintiffs who sued for gender discrimination based on disparate treatment after they were fired for violating

12

time clock procedures "had to prove that . . . they were treated less favorably than similarly situated members of the opposing class (females).").

Applying this teaching, we conclude that satisfying a prima facie case in this context requires Remaley to proffer evidence tending to show he was treated less favorably than a similarly situated person who was female or younger. *See Exxon Mobil Corp.*, 520 S.W.3d at 583; *AutoZone, Inc.*, 272 S.W.3d at 592; *Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917.

This record lacks such evidence, and evidence showing only that Remaley was replaced by a younger female does not suffice. Therefore, the trial court properly granted TA Operating's no-evidence motion for summary judgment. We overrule Remaley's first issue.

## II.    Denial of Motion to Compel

Remaley's second issue focuses on his contention that the trial court erred by denying his motion to compel seeking documents pertaining to "adverse treatment of other male managers who were terminated and replaced by females."

The scope of discovery generally rests within the trial court's discretion. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). When a trial court denies a motion to compel discovery, the ruling is reviewed under an abuse of discretion standard. *Johnson v. Davis*, 178 S.W.3d 230, 242 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)); *see also Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998) (courts employ abuse of discretion standard to review trial court's discovery rulings).

A party is typically entitled to obtain discovery on any matter that is not privileged and is relevant to the subject matter of the pending action and appears to

be reasonably calculated to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a). If the reviewing court determines there was an abuse of discretion, the court still must determine whether the error probably caused the rendition of an improper judgment. *Ford Motor Co. v. Castillo,* 279 S.W.3d 656, 667 (Tex. 2009) (citing Tex. R. App. P. 44.1(a)); *see also Austin v. Countrywide Homes Loans*, 261 S.W.3d 68, 75 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). Error is harmful if it "'probably caused the rendition of an improper judgment'" or "'probably prevented the appellant from properly presenting the case to the court of appeals.'" *Ford Motor Co.*, 279 S.W.3d at 667 (quoting Tex. R. App. P. 44.1(a)).

Applying these standards, we conclude that reversal is not warranted because the trial court did not abuse its discretion and no harm has been shown.

We already have rejected Remaley's contention that he could establish a prima facie case of employment discrimination based on disparate treatment in this particular context simply by proffering evidence that he was replaced by someone female or younger. We likewise reject his contention that the trial court erred in refusing to compel discovery aimed at showing only that other male TA Operating employees were terminated and replaced by females. Remaley does not contend that the requested discovery would lead to evidence of comparator female employees who were similarly situated in terms of their conduct but were not fired. Nor does he contend that the denial of his motion to compel discovery was harmful. To the contrary, Remaley asserts as follows in his appellate brief: "Although such evidence is unnecessary for purposes of avoiding summary judgment given the previously-referenced evidence, it may be further indicative as to Swisher's discriminatory intent and could be relevant for a jury to evaluate."

Remaley has not demonstrated error or harm under these circumstances.

14

Therefore, we overrule his second issue.

**CONCLUSION**

We affirm the trial court's judgment.


/s/     William J. Boyce
         Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jewell.