**Affirmed and Majority Opinion and Concurring and Dissenting Opinion filed December 8, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00938-CV

---

**JAMES HUDGENS, Appellant**

**V.**

**THE UNIVERSITY OF TEXAS MD ANDERSON CANCER CENTER, Appellee**

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2016-40798**

---

## M A J O R I T Y   O P I N I O N

Appellant James Hudgens appeals a summary judgment in favor of The University of Texas MD Anderson Cancer Center on his age discrimination claims, alleging disparate treatment and wrongful termination. We conclude that Hudgens did not raise a genuine issue of material fact on either claim, and we affirm the trial court's judgment.

**Background**

Hudgens worked for MD Anderson as a Safety Specialist in the Fire Life & Safety Group of the Environmental Health & Safety Department for the duration of his employment. Born in August 1953, Hudgens was fifty years old when MD Anderson hired him in 2004. MD Anderson terminated him in 2015 when he was sixty-one.

Hudgens reported to Fire Life & Safety Supervisor, Mike Woods. Woods reported to Fire Life & Safety Supervisor Manager, Reginald Phipps. Phipps reported to Environmental Health & Safety Director, Brian Galloy. Galloy reported to Environmental Health & Safety Executive Director, Matthew Berkheiser.

MD Anderson's disciplinary action policy outlines a progressive discipline process. The policy identifies five options for disciplinary action, depending on the circumstances, when an employee's work performance or conduct is below standard: notice, final notice, demotion, suspension without pay, and termination. When an employee is placed on "final notice," the manager documents (1) the type, reason for, and length of the final notice disciplinary period (from three to twelve months), (2) any previous discussions with the employee regarding below-standard performance, and (3) the consequences of failure to meet any stated future expectations.

**A.     First Alleged Adverse Employment Action**

Hudgens complains of two adverse employment actions by MD Anderson. First, on February 12, 2015, MD Anderson issued Hudgens a twelve-month final notice for violating MD Anderson's Personal Protective Equipment ("PPE") Policy by failing to wear required safety equipment (a hard hat) in a construction area (the "Final Notice"). The Final Notice stated: (1) there were signs posted at the

construction site indicating that PPE was required upon entering; and (2) Hudgens was asked by another individual about not wearing PFE and Hudgens still did not immediately leave the site to obtain PPE.

Wade Martin, another MD Anderson Fire Life & Safety Group employee, was with Hudgens at the time, and Martin also failed to wear a hard hat in the construction area. Like Hudgens, Martin received a twelve-month final notice on February 12, 2015 for failing to wear required safety equipment in a construction area. Martin was fifty-six years old when he received his final notice.

Hudgens appealed his Final Notice under MD Anderson's grievance process. Hudgens testified in his deposition that in a meeting related to the grievance, he was told by Phipps that another manager, Galloy, was "targeting" him. Hudgens also testified that Galloy asked him on five or six occasions, "Why are we paying you the big bucks?" Hudgens's Final Notice was upheld and not modified.

The final notices impaired Hudgens's and Martin's potential for a raise during part of 2015 because the notices state employees "are not eligible to receive a merit increase during the first 90 days of a Notice/Final Notice."

The record does not contain an employee grievance form signed by Martin, but Martin testified that he asked his supervisor, Phipps, if he could get his raise back, and Phipps agreed to this request. Martin did not consider his request for a raise as a grievance; he testified he filled out some paperwork but was not aware it was a grievance. Berkheiser testified in his affidavit that: (1) Martin did not appeal his final notice; (2) Martin's final notice was never reduced or rescinded; and (3) after showing improvement following his final notice, Martin received an off-cycle merit raise for fiscal year 2015 on July 1, 2015 (more than ninety days after his February 12, 2015 final notice).

3

Hudgens did not receive a raise in 2015 even though he was placed on the same twelve-month final notice as Martin. (As explained below, Hudgens was terminated in May 2015). Based on these events, Hudgens alleged in his lawsuit that MD Anderson discriminated against him based on his age, because Hudgens did not enjoy a 2015 raise but Martin—five years' Hudgens's junior—did.

## B.     Second Alleged Adverse Employment Action

The second adverse action at issue is MD Anderson's decision to terminate Hudgens on May 26, 2015 following an April flooding incident. On March 31, 2015, Hudgens, as site/facilities manager, prepared and submitted an outage request for the shutdown of a fire sprinkler system in operating room number 8 ("OR 8") on the fifth floor of the building. The sprinkler system shutdown was to allow contractors to extend and lower a fire sprinkler head in OR 8. Hudgens stated in his petition that "[t]he task to shut off the sprinklers was assigned to Hudgens and his crew." According to Hudgens, his subordinate, Ruben Dimas, was responsible for identifying and closing the valve feeding the sprinklers in OR 8. Although OR 8 was on the fifth floor, the shut off valve was located on sixth floor—a fact unknown to Hudgens or Dimas. Before work began, Dimas turned off valves located on the fifth floor but not the sixth floor. As a result, when the subject sprinkler head in OR 8 was removed by the contractor, the operating room flooded and caused at least $157,000 and as much as $250,000 in damage to the operating suite, adjacent areas, and surgical equipment.

On May 20, 2015, MD Anderson sent Hudgens an "Intent to Terminate" letter, stating "you have failed to perform job duties at an acceptable level." The Intent to Terminate stated:

> On March 31, 2015 James "Jim" W. Hudgens submitted an outage request for the shutdown of the fire sprinkler system located on Alkek

4

level 5 inside of operating room 8 (OR#8). This shutdown was necessary to allow a contractor to lower a sprinkler head inside of the operating room. On April 13, 2015 Jim assisted with the fire sprinkler system shutdown for this work. Two sprinkler valves on Alkek level 5 were closed, but these two valves did not shutdown the fire sprinkler system inside of the operating room. Expecting that the correct valves had been closed, the contractor removed the sprinkler head while the sprinkler system was still under pressure and this caused flooding in the room. The sprinkler water caused damage to the equipment inside of the operating room, the control room and other adjacent areas.

There is documentation which demonstrates that Jim Hudgens had prior knowledge of the correct valve location. Jim is an experienced safety specialist who routinely performs this type of task. He did not perform the necessary steps required to identify the correct valve of the system that serves the operating room. Jim's failure to perform the due diligence necessary to execute this type of task effectively resulted in damages to the operating room and its equipment.

The Intent to Terminate also noted "Hudgens was placed on a 12-month Final Notice on February 12, 2015 for conduct related issues." Hudgens sent a written response to the Intent to Terminate.

On May 26, 2015, Woods sent Hudgens a letter stating that Hudgens's employment was terminated immediately because of his unacceptable work performance. In the letter, Woods thanked Hudgens for providing a response but noted that the response contained no new information not already considered by MD Anderson.

Dimas was not terminated, but MD Anderson placed him on final notice. Dimas appealed his final notice but resigned before his appeal was completed.

Martin provided support for the OR 8 work, but he was not terminated or disciplined.

Hudgens was sixty-one years old when he was terminated. He was replaced in October 2015 by Stephen Mayne, who was fifty-two years old.

5

After filing a charge of discrimination with the Equal Employment Opportunity Commission, Hudgens sued MD Anderson, asserting claims of age discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA"). *See* Tex. Lab. Code ch. 21. Hudgens alleged that MD Anderson treated Hudgens less favorably than a similarly situated employee (Martin) because of Hudgens's age when MD Anderson gave a raise to Martin but not Hudgens following the February 2015 final notices, and that MD Anderson terminated Hudgens because of his age.

MD Anderson filed a combined traditional and no-evidence motion for summary judgment on both of Hudgens's claims, arguing among other things that there was no evidence that MD Anderson treated Hudgens differently than the comparator employee or that MD Anderson terminated Hudgens because of his age. MD Anderson also argued that Hudgens could not make a prima facie showing of age-based wrongful termination because his replacement was within the protected class or, alternatively, not significantly younger than Hudgens. Hudgens filed a timely response.

The trial court granted MD Anderson's motion on both traditional and no-evidence grounds.

Hudgens appeals. He argues that the trial court erred because a genuine issue of material fact exists as to both claims.

## Standard of Review

We review a summary judgment under a de novo standard of review. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "[W]e apply the familiar standard of review appropriate for each type of summary judgment, taking as true all evidence favorable to the nonmovant, and indulging every

reasonable inference and resolving any doubts in the nonmovant's favor." *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 675-76 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

To prevail on a traditional motion for summary judgment, a movant must establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. Once the movant facially establishes its right to summary judgment, the burden shifts to the nonmovant to present a genuine and material fact issue that precludes summary judgment. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict and is governed by the standards of Texas Rule of Civil Procedure 166a(i). *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). After the movant specifically states the elements for which there is no evidence, the burden shifts to the nonmovant to produce more than a scintilla of probative evidence raising a genuine issue of material fact on those elements. *See id.*; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Unless the nonmovant produces summary-judgment evidence that raises a genuine issue of material fact, the trial court must grant summary judgment. Tex. R. Civ. P. 166a(i).

**Analysis**

**A.     Framework For Discrimination Claims Based On Circumstantial Evidence**

Hudgens asserts that MD Anderson discriminated against him on the basis of age in violation of the TCHRA.   Under the act, an employer commits an unlawful employment practice if, because of age, the employer fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment.  Tex. Lab. Code § 21.051(1); *Kaplan v. City of Sugar Land*, 525 S.W.3d 297, 302 (Tex. App.—Houston [14th Dist.] 2017, no pet.).  The TCHRA provisions referring to discrimination because of age apply only to alleged discrimination against an individual forty years of age or older.  Tex. Lab. Code § 21.101.  Because the Texas Legislature patterned the TCHRA after federal law, *see Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001), when analyzing a claim brought under the TCHRA, we look to state cases as well as to the analogous federal statutes and the cases interpreting those statutes.  *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012); *Remaley v. TA Operating LLC*, 561 S.W.3d 675, 679 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

A plaintiff can establish discrimination under the TCHRA either by direct evidence or by circumstantial evidence that permits an inference of discrimination.  *See Garcia*, 372 S.W.3d at 634.  The second alternative is involved here.  When the claimant's case is based on circumstantial evidence, we apply the familiar *McDonnell Douglas* burden-shifting framework.  *See id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)).  Initially, the plaintiff-employee must meet the minimal burden of establishing a prima facia case, which entitles the employee to a presumption of discrimination.  *Id*. (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981), and *Wal-Mart Stores, Inc. v. Canchola*, 121

S.W.3d 735, 739 (Tex. 2003)). The initial presumption of discrimination is "merely an evidence-producing mechanism that can aid the plaintiff in his ultimate task of proving illegal discrimination by a preponderance of the evidence." *Id*.; *see also Remaley*, 561 S.W.3d at 679.

If the employee meets his prima facie burden, the defendant-employer must produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000) (per curiam); *Okpere v. Nat'l Oilwell Varco, L.P.*, 524 S.W.3d 818, 828 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). If the employer provides a non-discriminatory explanation, the presumption arising from the prima facie case vanishes and the employee cannot prove a statutory violation without producing evidence that the employer's stated reason is false and a pretext for intentional discrimination. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018); *Toennies*, 47 S.W.3d at 477; *Willrich*, 28 S.W.3d at 24. Although the burden of production shifts between the employee and employer in circumstantial-evidence cases, in both direct- and circumstantial-evidence cases, the burden of persuasion always remains with the employee. *Clark*, 544 S.W.3d at 782 (citing *Burdine*, 450 U.S. at 253).

Hudgens alleged that MD Anderson violated the TCHRA by discriminating against him because of his age in connection with two adverse employment actions: (1) his failure to receive a raise following his February 2015 Final Notice; and (2) his May 2015 termination. We begin with the termination claim.

**B.      Wrongful Termination Claim**

1.      *We presume without deciding that Hudgens met his prima facie burden as to his wrongful termination claim.*

Hudgens asserts that he may establish an initial presumption of age discrimination concerning wrongful termination by showing that he was:  (1) a member of a protected class (i.e., at least forty years old); (2) qualified for his position; (3) terminated by the employer; and (4) replaced by someone "significantly" younger, even if his replacement is also within the protected class. *See Garcia*, 372 S.W.3d at 632, 641.[1]  The first three elements are established in the record and not disputed.  At issue is the final element, the formulation of which, courts have stated, will vary depending on the circumstances.  *See Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, ---S.W.3d---, 2020 WL 6811725, at *4 (Tex. Nov. 20, 2020); *Remaley*, 561 S.W.3d at 679-82 (citing *Canchola*, 121 S.W.3d at 739; *Burdine*, 450 U.S. at 253).  But the plaintiff's burden at this stage of the case is not onerous.  *Canchola*, 121 S.W.3d at 739.

Hudgens was sixty-one when he was terminated, and the disagreement is whether his replacement, who was fifty-two, is sufficiently younger than Hudgens to support an initial presumption that Hudgens was terminated because of his age.[2]  According to MD Anderson, "[t]he overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough to make out the fourth part of the age discrimination *prima facie* case."  Hudgens, on the other hand, cites countering authority for the proposition that a ten-year age

---

[1] This is a "true replacement" case in the sense that the parties agree Hudgens was replaced by a new employee hired to fill Hudgens's former position.  *See Tex. Tech*, 2020 WL 6811725, at *4-6 (discussing true replacement age discrimination prima facie case).

[2] Hudgens states in his reply brief that there is no dispute that Mayne was born on June 5, 1963.  Hudgens's date of birth is August 9, 1953.  Thus, the age difference between Mayne and Hudgens is nine years and ten months.

difference, or less, is "significant" enough to trigger an initial presumption of discrimination.

We need not decide the precise question, however, because, as we explain below, Hudgens has not offered a scintilla of evidence that MD Anderson's stated justification for terminating him was pretext for intentional age discrimination. Because the absence of a fact issue on pretext is dispositive, we may presume without deciding that Hudgens met his prima facie burden. Although our dissenting colleague would prefer to address this nonessential issue, it is not unusual for a court to presuppose an adequate prima facie showing and proceed to the remaining *McDonnell Douglas* steps.[3] This court is known to entertain the assumption when warranted,[4] as we did just weeks ago.[5] In appropriate cases, presuming a claimant has articulated a prima facie case avoids addressing matters unnecessary to disposition,[6] thereby ensuring our opinions are not advisory.[7]

2. *MD Anderson articulated a legitimate, non-discriminatory reason for Hudgens's termination.*

Given the presumption afforded Hudgens, the burden shifted to MD Anderson to produce evidence of a legitimate, non-discriminatory reason for terminating his employment. *See Willrich*, 28 S.W.3d at 24. MD Anderson met this burden by producing evidence that Hudgens was terminated for unacceptable work

[3] *E.g.*, *Butcher v. City of San Antonio*, No. 04-15-00338-CV, 2016 WL 889306, at *2 (Tex. App.—San Antonio Mar. 9, 2016, no pet.) (mem. op.); *Clemons v. Tex. Concrete Materials, Ltd.*, No. 07-09-00034-CV, 2010 WL 4105662, at *4 (Tex. App.—Amarillo Oct. 19, 2010, no pet.) (mem. op.); *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

[4] *Okpere*, 524 S.W.3d at 828.

[5] *Fields v. Houston Indep. Sch. Dist.*, No. 14-19-00010-CV, 2020 WL 6073758, at *6 (Tex. App.—Houston [14th Dist.] Oct. 15, 2020, no pet. h.) (mem. op.).

[6] Tex. R. App. P. 47.1.

[7] *See* Tex. Const. art. II, § 1.

11

performance concerning the April 2015 flooding incident, which occurred during the pendency of his twelve-month Final Notice. On appeal, Hudgens does not argue that MD Anderson's stated reason is facially discriminatory; he instead focuses his arguments on the pretext issue. So we turn to that question.

3. *Hudgens failed to raise a genuine issue of material fact that MD Anderson's reason for terminating him was pretext for age discrimination.*

The burden shifted back to Hudgens to produce evidence that MD Anderson's non-discriminatory reason was merely a pretext for age discrimination. We conclude that he has not satisfied that burden. Hudgens's central shortcoming concerns his statement of the proof necessary to create a fact issue on pretext. Citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000), and Fifth Circuit decisions,[8] Hudgens asserts that he need only present evidence that MD Anderson's stated reason was false or incredible. But this is an incomplete statement of law.

Hudgens bore the ultimate burden of presenting evidence that MD Anderson terminated him because of his age. Tex. Lab. Code § 21.051(1); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (applying Age Discrimination in Employment Act of 1967). To create a genuine issue of material fact that the employer's reason is pretext for intentional discrimination, Hudgens had to show both that the reason proffered by MD Anderson was "'false, *and* that discrimination was the real reason.'" *Canchola*, 121 S.W.3d at 740 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original)). In addition to the state's highest civil court, *id.*, our court has repeated this legal standard on several

---

[8] *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003); *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

occasions,[9] as have most other intermediate appellate courts in the state.[10] Taken as a whole, the evidence must create a genuine and material fact issue as to whether the employer's stated reason was not what actually motivated the employer *and* support a reasonable inference that age was a determinative factor in the actions about which the plaintiff complains. *See Hicks*, 509 U.S. at 516-17; *Latting*, 2018 WL 1404501, at *6. "[I]t is not enough to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Reeves*, 530 U.S. at 147 (internal quotations omitted).

Applying the correct standard, it is apparent that Hudgens's wrongful termination claim has no merit. Hudgens's pretext argument is that MD Anderson's reason was false. According to MD Anderson, Hudgens "failed to perform job duties at an acceptable level" in connection with the OR 8 flooding incident and "did not perform the necessary steps required to identify the correct valve of the system that serves the operating room." Certainly, MD Anderson's reason is not "false" in the sense that the flooding incident was fabricated. OR 8 was flooded. The dispute

---

[9] *E.g.*, *McNeel v. Citation Oil & Gas Corp.*, 526 S.W.3d 750, 760 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Okpere*, 524 S.W.3d at 829; *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Fields*, 2020 WL 6073758, at *6.

[10] *E.g.*, *Tex. Dep't of Agric. v. Latting*, No. 03-17-00603-CV, 2018 WL 1404501, at *6 (Tex. App.—Austin 2018, no pet.) (mem. op.); *Sanchez v. Tex. A&M Univ.-San Antonio*, No. 04-17-00197-CV, 2018 WL 6517407, at *4 (Tex. App.—San Antonio Dec. 12, 2018, no pet.) (mem. op.); *Vanzante v. Tex. A&M Univ.-Kingsville*, No. 13-15-00313-CV, 2016 WL 3366055, at *3 (Tex. App.—Corpus Christi June 16, 2016, pet. denied) (mem. op.); *Moreno v. Tex. Dep't of Transp.*, 440 S.W.3d 889, 895 (Tex. App.—El Paso 2013, pet. denied); *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 814 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Baker Hughes Oilfield Operations, Inc. v. Williams*, 360 S.W.3d 15, 22-23 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Sw. Bell Tel., L.P. v. Edwards*, No. 05-09-00606-CV, 2011 WL 3672288, at *8 (Tex. App.—Dallas Aug. 23, 2011, no pet.) (mem. op.); *Elgaghil v. Tarrant Cty. Junior Coll.*, 45 S.W.3d 133, 140 (Tex. App.—Fort Worth 2000, pet. denied); *Baehler v. Fritz Indus., Inc.*, 993 S.W.2d 181, 185 (Tex. App.—Texarkana 1999, pet. denied).

is about MD Anderson's assessment of whether the flood resulted from a failure by one or more employees to adequately fulfill job duties. MD Anderson determined that both Hudgens and Dimas bore at least some responsibility. Hudgens, however, attached summary judgment evidence showing that responsibility to shut off the correct valve rested with Dimas, and that neither Hudgens nor Dimas knew where the correct valve was located. Crediting Hudgens those assertions, as we must in the summary judgment context, a disagreement with the employer's determination of inadequate work performance generally is not sufficient to raise a fact issue on pretext. *See Kaplan*, 525 S.W.3d at 308 ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."); *Donaldson v. Tex. Dep't of Aging & Disability Servs*., 495 S.W.3d 421, 438 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Winters v. Chubb & Son, Inc*., 132 S.W.3d 568, 578 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Nor is it sufficient to say, as Hudgens insists, that the employer "arrived at a possibly incorrect conclusion." *Canchola*, 121 S.W.3d at 740. The issue at the pretext stage is not whether the employer made an erroneous decision; it is whether the decision, even if incorrect, was the real reason for the employment determination. *See Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 899 (5th Cir. 2002). "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Little v. Republic Refining Co*., 924 F.2d 93, 97 (5th Cir. 1991).

Indulging the proposition that Hudgens has created a material fact issue on whether MD Anderson's stated reason was false or not credible, Hudgens offered no evidence to show that age discrimination was the reason behind the decision to terminate him, and he does not argue otherwise in his brief. *See Canchola*, 121 S.W.3d at 740. There is no indication in the summary judgment record that would

support a reasonable inference that MD Anderson terminated Hudgens because of his age. *See, e.g., Kaplan*, 525 S.W.3d at 308 (affirming summary judgment); *Donaldson*, 495 S.W.3d at 438 (affirming summary judgment); *Moreno*, 440 S.W.3d at 895 (affirming directed verdict); *see also Lopez v. Exxon Mobil Dev. Co.*, No. 14-16-00826-CV, 2017 WL 4018359, at *7-9 (Tex. App.—Houston [14th Dist.] Sept. 12, 2017, pet. denied) (mem. op.) (affirming summary judgment).

To be sure, the Supreme Court has stated that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. Though Hudgens does not assert this point explicitly, we infer from his reliance on *Reeves* that he believes the stated principle applies here. Of course, in *Reeves* and subsequent decisions, the Supreme Court has emphasized that a showing of falsity by the plaintiff would not "always be adequate to sustain a jury's finding of liability," and it recognized that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id*. at 148. For example, the court said, "an employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id*.; *see also Williams*, 360 S.W.3d at 23. Whether judgment as a matter of law is appropriate in any particular case will depend on a "number of factors," including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on

15

a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49; *Williams*, 360 S.W.3d at 23.

As noted, the Supreme Court of Texas has long followed these principles in construing the Texas act. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 588 (Tex. 2008) (per curiam); *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 915 (Tex. 2005); *Canchola*, 121 S.W.3d at 740. For instance, in a discrimination case brought under the TCHRA, even if the evidence could be sufficient to support an implied finding that the reasons cited by the employer for the employee's termination are false, the employee still bears "the ultimate burden" to prove that the employer discriminated against him because of a prohibited consideration. *Canchola*, 121 S.W.3d at 740 (citing *Reeves*, 530 U.S. at 147-49).

Based on our review of the record in the light most favorable to Hudgens, we conclude that the present circumstances are not the sort the *Reeves* court contemplated when it left open the possibility that a reasonable inference of intentional discrimination may be based solely on the prima facie case combined with evidence that the employer's reason is false. Hudgens's prima facie case, while presumed, is still weak. Though Hudgens was replaced by someone younger, Mayne was fifty-two when hired and thus well within the protected group at that time—and notably older than Hudgens (fifty) when he was hired in 2004. Second, Hudgens's evidence is not strongly probative of falsity. His attack on MD Anderson's termination justification amounts to little more than disagreement over the employer's assessment of inadequate work performance, which generally is insufficient. *See Canchola*, 121 S.W.3d at 740; *Kaplan*, 525 S.W.3d at 308; *Winters*, 132 S.W.3d at 578. Other uncontroverted testimony from Hudgens reinforces the validity of MD Anderson's proffered reason for firing him. Hudgens, for example, refused to "accept *full* responsibility" (emphasis added), but he at least accepted

16

some blame by acknowledging he "could have probably done a whole lot of stuff different." Hudgens also admitted that he reviewed the shop response to the outage request, which did not specify the correct location of the shut off valve on the sixth floor as it should have. His testimony buttresses to some extent MD Anderson's decision to discipline both Hudgens and Dimas. In this regard, moreover, Hudgens has not alleged or presented evidence that MD Anderson's termination decision deviated from its progressive disciplinary procedure.

Today's case presents circumstances distinguishable from those at issue when courts have determined a fact issue on pretext warranted a trial. *See, e.g.*, *Toennies*, 47 S.W.3d at 482 ("Toennies submitted evidence that he was replaced by two considerably younger engineers, and statistical evidence that older Quantum engineers had a much higher rate of turnover than their younger counterparts."); *Clemons*, WL 4105662, at *4 (evidence of age-related remarks prior to termination); *Menefee v. McCaw Cellular Commc'ns*, No. 05-02-00142-CV, 2003 WL 1461469, at *4 (Tex. App.—Dallas Mar. 24, 2003, no pet.) (mem. op) (direct evidence of employees saying that they did not want to work with plaintiff because "she was a woman"). Hudgens's principal cases likewise are distinguishable. *See Palasota*, 342 F.3d at 576-77 (memo, prepared two months before plaintiff's firing, recommending severance packages for fourteen employees, all of whom were specifically identified as over fifty years of age, in order to "thin the ranks" was some evidence supporting plaintiff's age discrimination claim); *Laxton*, 333 F.3d at 580-82, 585 (in addition to "the strength of Laxton's prima facie case," "Laxton produced evidence of pretext and a discriminatory remark from which the jury could reasonably infer that intentional discrimination took place").

For these reasons, we conclude Hudgens failed to raise a genuine issue of material fact on pretext that would preclude summary judgment in MD Anderson's

favor, and the trial court did not err in dismissing Hudgens's wrongful termination claim.

### 4. *Response to the dissent*

As discussed, Hudgens argues that MD Anderson's stated reason for his termination was false, but he has presented no evidence that age discrimination was the real reason for the challenged action. Our dissenting colleague fills in the blanks for him by discussing evidence she says is sufficient to raise a fact issue on discrimination, though Hudgens has not relied on the facts cited by the dissent to support his pretext argument. The dissenting justice says a jury could find that age was a motivating factor because Hudgens was told by Phipps that another manager, Galloy, was "targeting" him, and that Galloy asked Hudgens several times, "Why are we paying you the big bucks?" We disagree.

During his deposition, Hudgens identified only one person, Galloy, he thought was discriminating against him because of his age. When pressed why he formed that belief, Hudgens testified that "it's the way [he] feel[s] when [he's] around [Galloy]," and Galloy is "just nipping at everything." Hudgens also said he thought Galloy was "targeting" him because that is what Phipps told him. However, Phipps did not say why he thought Galloy was targeting Hudgens. And the only other explanation Hudgens offered as to why he thought Galloy was targeting him was a reason unrelated to his age. This cumulative testimony shows nothing more than Hudgens's subjective belief or feeling of age-related animus, which is insufficient to defeat summary judgment in this context.[11]

---

[11] *E.g.*, *Gold v. Exxon Corp.*, 960 S.W.2d 378, 385 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (employee's subjective belief that reasons given by employer for discharge were pretext for discrimination not sufficient to overcome summary judgment); *see also Tex. Tech*, 2020 WL 6811725, at *11; *Clark*, 544 S.W.3d at 773 (speculation and subjective beliefs not probative of improper conduct or discriminatory animus); *Apache Corp. v. Davis*, 573 S.W.3d 475, 497 (Tex.

18

In the mere three pages of Hudgens's deposition covering Galloy's "big bucks" remarks, Hudgens did not link the comments to his protected age group or his termination. Hudgens testified that Galloy made the statement in a meeting during the grievance process following the February Final Notice—not in connection with his May termination. According to Hudgens, moreover, the comment was Galloy's way of reminding him that "he should have known the rules." There was also an "allusion" to the sentiment during a March 19 meeting with the executive director, Matthew Berkheiser, though Hudgens acknowledged that Berkheiser did not use those words. Here again, Hudgens's description of the conversation with Berkheiser had no material relationship to his age group: Hudgens believed Berkheiser was telling him that he "should know better" than to enter a construction area without wearing PPE. In answering a final few questions about Galloy's "big bucks" remarks, Hudgens said he heard Galloy make the statement five or six times, but Hudgens provided no relevant context, did not know what Galloy intended by the remarks, and "[didn't] really care."

Even cursory review of Hudgens's testimony helps illuminate why the "targeting" and "big bucks" stray remarks cannot create a genuine and material fact issue that Hudgens's age was a motivating factor in the termination decision, as the dissenting justice contends. Generally, a comment is probative of discrimination when it is "(1) related to the plaintiff's protected class, (2) proximate in time to the adverse employment decision, (3) made by an individual with authority over the employment decision, and (4) related to the employment decision at issue." *Winters*, 132 S.W.3d at 578. Galloy's comments do not meet these criteria. *Compare id.*

<hr>

App.—Houston [14th Dist.] 2019, pet. denied); *Greathouse v. Alvin Indep. Sch. Dist.*, 17 S.W.3d 419, 425 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("Summary judgment for the defendant is proper when a plaintiff claiming race discrimination presents only conclusory allegations, improbable inferences, unsupportable speculation, or subjective beliefs and feelings.").

(rejecting probative value of comment that "I'm going to get you, and I don't like you") (citing *Elgaghil*, 45 S.W.3d at 140), *with Jefferson County v. Davis*, No. 14-13-00663-CV, 2014 WL 4262184, at *5-6 (Tex. App.—Houston [14th Dist.] Aug. 28, 2014, pet. denied) (mem. op.) (statements that Davis was "too old to be working here" and should retire held sufficient to support jury finding that age was a motivating factor in termination decision). While the dissenting justice cites this test—Hudgens does not—our colleague fails to explain why it is met. It is not met. Neither remark references Hudgens's protected age group, and Hudgens himself did not attribute any age-related motivation to them; rather, he said he did not know Galloy's intent and did not care. Further, after thoroughly reviewing the record, we see no indication that the remarks were proximate in time or otherwise related to the May termination decision. Neither statement is sufficient in itself to create a fact issue and, hence, together they cannot support a reasonable inference that "Galloy was targeting Hudgens because he was being paid the big bucks," as the dissent incorrectly states.

For his part, Hudgens has not argued that Phipps's "targeting" comment or Galloy's "big bucks" remarks support a fact issue on pretext, and it is easy to see why. Neither remark is probative of age discrimination under Texas law, and to the extent Hudgens imputed age-related animus to either of them, his belief is based on speculation and subjective feelings. Thus, Hudgens has made the sensible choice not to advance any argument based on the "targeting" or "big bucks" comments in support of the pretext issue. Indeed, that portion of his brief does not even allude to the stray remarks on which the dissenting justice relies. Hudgens referenced those remarks only once in his brief, and then only in connection with his complaint regarding the February Final Notice issue—a claim on which the panel agrees unanimously that summary judgment is appropriate. Hudgens did not cite to the law

20

on stray remarks in his brief, or seek to apply it, or develop and file summary judgment evidence (such as an affidavit) clarifying the circumstances surrounding the remarks (such as *when* they occurred) that would cloak them with probative value of discrimination. Had Hudgens desired to contend that these comments create a fact issue on pretext as to the termination claim, he would have taken these steps in the trial court and in our court. He chose not to, prudently so given the evidence before us.

Presumably, the dissenting justice cites to this evidence because Hudgens references it in the statement of facts section of his brief, and our colleague construes his brief liberally to tie that evidence to Hudgens's pretext argument even though Hudgens has not drawn that connection himself. Of course, our duty to construe briefs liberally so as to reach the merits of issues the parties raise does not include abandoning our station as neutral judges and constructing merits arguments the parties have chosen not to make.[12] In any event, were we to construe Hudgens's brief as contending that a fact issue on pretext exists based on his belief that he was being "targeted" or that he was fired because he was an older employee making "big bucks," we are compelled to reject those arguments for the reasons stated.

## C. Disparate Treatment Claim

Next, we turn to Hudgens's second alleged adverse employment action: the failure to receive a raise after the February 2015 Final Notice.

---

[12] *See Salazar v. Sanders*, 440 S.W.3d 863, 872 (Tex. App—El Paso 2013, pet. denied) ("Appellate courts are required to construe briefs reasonably, yet liberally, so that the right to appellate review is not lost by waiver, and in so doing, we should reach the merits of an appeal whenever reasonably possible. At the same time, an appellate court should not make the appellant's argument for him because the court would be abandoning its role as a neutral adjudicator and would become an advocate for the appellant.") (internal citation omitted).

Hudgens contends he was treated less favorably than Martin because MD Anderson allegedly reduced Martin's final notice from twelve months to six months and, consequently, Martin received a raise on July 1, 2015; whereas Hudgens did not receive a raise at any time before his termination.

The summary judgment record contains no evidence that Martin received a raise because his final notice was reduced from twelve to six months. To attempt to prove his claim, Hudgens relies on Martin's testimony that at the time MD Anderson issued the final notice for failing to wear required PPE in a construction area, Martin was told that the final notice would be effective for six months. However, MD Anderson ultimately decided that Martin's final notice would last for twelve months, not six months, as the notice expressly states. The record contains no document supporting Hudgens's contention that Martin's final notice was reduced to six months. To the contrary, Berkheiser testified in his affidavit that (1) Martin's twelve-month final notice was never reduced, and (2) after showing improvement following his twelve-month final notice, Martin received an off-cycle merit raise for fiscal year 2015 on July 1, 2015.

Hudgens's theory of liability is also negated by the final notice's statement that employees "are not eligible to receive a merit increase during the first 90 days of a Notice/Final Notice." So, the final notice prohibited Martin from receiving a raise only during the ninety-day period following February 12, 2015; it did not preclude Martin from receiving a raise on July 1, 2015. Hudgens alleges in his petition that he should have received a raise effective March 1, 2015. But the raise to which Hudgens claims entitlement was clearly foreclosed by his February 12, 2015 Final Notice. Martin also did not receive a raise effective March 1.

We conclude that Hudgens presented no evidence that he was treated less favorably than another similarly situated employee. For that reason, Hudgens

22

presented no evidence supporting the final element of his prima facie case, and the trial court did not err in granting summary judgment on Hudgens's disparate treatment claim. *See Tex. Tech*, 2020 WL 6811725, at *9; *Remaley*, 561 S.W.3d at 677-78 (claimant did not prove prima facie case when there was no evidence that he was treated less favorably than similarly situated employee); *Donaldson*, 495 S.W.3d at 435-36 (same).

## Conclusion

We affirm the trial court's summary judgment as to both Hudgens's age discrimination claims for disparate treatment and wrongful termination.


/s/  Kevin Jewell
    Justice


Panel consists of Justices Wise, Jewell, and Poissant (Poissant, J., concurring and dissenting).